## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASHER HAFT, individually and on behalf of all others similarly situated, | CASE NO.: |
| Plaintiff, | CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| GENERAL ELECTRIC COMPANY and HAIER US APPLIANCE SOLUTIONS, INC. d/b/a GE APPLIANCES, | |
| Defendants. | |

_____/

## CLASS ACTION COMPLAINT

Plaintiff Asher Haft ("Plaintiff") brings this Class Action Complaint against Defendants General Electric Company and Haier US Appliance Solutions, Inc. d/b/a GE Appliances (collectively, "Defendants" or "GE"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experience and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

## NATURE OF THE ACTION

1.      This is a civil class action brought by Plaintiff on behalf of all consumers who purchased GE's ranges and wall ovens featuring glass-front doors made with soda lime glass (collectively, the "Ovens") for normal, household use, which contain a defect causing the glass within the glass-front door to unexpectedly break or shatter during normal and foreseeable use.

2.      GE is one of the largest home appliance companies in the United States.  Since 1907, GE has been designing, manufacturing, and selling home appliances, and boasts that it

1

"build[s] the world's best appliances that are in half of all U.S. homes."[1]  A substantial portion of GE's business includes the design, manufacture, distribution, marketing, advertising, and sale of Ovens featuring glass-front doors made with soda lime glass, which are the subject of this action.

3.      Over the course of several decades, GE gained the trust of consumers, who reasonably believe that GE's products, including its Ovens, are made with quality materials and can be used safely, as intended.

4.      GE designs, manufactures, markets, advertises, distributes, and sells its Ovens to consumers throughout the United States, including in the State of New York.

5.      GE distributes and sells its appliances, including the Ovens, online and through various authorized retailers.

6.      The cost of the GE Ovens ranges from approximately $500.00 to over $4,000.00 MSRP.[2]

7.      GE's glass-front Ovens suffer from a common design and/or manufacturing defect, whereby the soda lime glass used in the glass-front doors cannot withstand the high temperatures that are common when the Ovens are used for their ordinary purpose, resulting in shattering of the glass within the glass-front door (the "Defect"), and rendering the Ovens unusable for their intended purpose of safely and properly heating food.

8.      Feasible alternative designs and materials were available to GE at the time it designed and manufactured the defective Ovens, and such alternative designs were and are used by other manufacturers to produce and sell non-defective ovens.

---

[1] https://geappliancesco.com/about-us/ (last viewed January 18, 2020).
[2] https://www.geappliances.com/ge-appliances/kitchen/ranges/ and
https://www.geappliances.com/ge-appliances/kitchen/wall-ovens/(last visited Jan. 20, 2020).

9.     Plaintiff seeks damages and equitable remedies for himself, and for the proposed Class.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs, and in which Plaintiff and some Members of the proposed Classes are citizens of a state different from Defendants.

11.     This Court has personal jurisdiction over Defendants because they transact business in the United States, including in this District, have substantial aggregate contacts with the United States, including in this District, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed themselves of the laws of the United States and the State of New York.

12.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District and Defendants transact business in this District.

## PARTIES

13.     Plaintiff Asher Haft is a resident of Brooklyn, New York who purchased and used a GE Oven within the relevant time period.

14.     Defendant General Electric Company is a New York corporation with its principal place of business located at 41 Farnsworth Street, Boston, Massachusetts 02210.

15.    Defendant Haier US Appliance Solutions, Inc., doing business as GE Appliances, is a Delaware corporation with its principal place of business located at 4000 Buechel Bank Road, Louisville, Kentucky 40225.

## FACTUAL ALLEGATIONS

16.    Founded in 1892 as a result of a merger between Edison General Electric Company and Thomson-Houston Electric Company, GE is an American multinational company that has produced a wide variety of home appliances, including ovens, for more than 125 years.[3]

17.    GE represents that "we make life better by designing and building the world's best appliances. From design to production to service, our goal is to help people improve their lives at home."[4] "When people buy from us, they don't just get an appliance, they become a member of our family, a family that is there for one another for the life of the product."[5]

18.    According to GE's appliance milestone timeline, it was 1907 when it marketed its "First Full Line of Cooking Devices," including an electrical cooktop.[6] In 1963, after several decades of manufacturing cooking devices, GE unveiled the first self-cleaning oven.[7] Many of its milestones through to the modern era, include innovations in the development of ovens.

19.    On its website, GE represents itself to be "America's #1 Appliance Brand."[8]

20.    GE further represents that in its sale of home appliances it employs a "forward-thinking tradition that spans over 100 years," and further that it "…make[s] appliances that work in service of you. By understanding exactly what you need — and exactly what you don't. [W]hen

---

[3] https://www.ge.com/about-us (last visited Dec. 22, 2020);
https://www.geappliances.com/ge/cooking-milestones/ (Last visited January 14, 2021).
[4] https://www.geappliances.com/our-company/ (Last visited Dec. 22, 2020).
[5] *Id.*
[6] https://www.geappliances.com/ge/cooking-milestones/ (Last visited January 14, 2021).
[7] *Id.*
[8] https://www.geappliances.com/ (Last visited January 14, 2021);

we build our world-class refrigerators, dishwashers, ovens, washers and dryers — what we're really creating are good things, for life."[9]

21.     To that end, GE produces and sells hundreds, if not thousands, of kitchen appliances, including the Ovens.

22.     To date, GE has approximately 205,000 employees, many of whom work in its U.S.-based manufacturing facilities where, according to GE's website, a significant portion of its ovens are made.[10]

23.     As of 2019, GE had revenues in excess of $122 billion. [11]

## COMMON FACTUAL ALLEGATIONS

24.     Each of the Ovens at issue in this litigation are branded with the "GE" logo and are sold as GE model Ovens.

25.     Each of the Ovens has an outer door with a glass window made of soda lime glass.

26.     Each of the Ovens contains common design and/or manufacturing Defects that cause the glass on their doors to shatter. More specifically, the soda lime glass used in the Ovens suffers from a uniform defect whereby it cannot withstand the high temperatures that are common when the Ovens are used for their ordinary purpose, such as cooking, resulting in the breaking or shattering of the glass-front door (the "Defect").

27.     GE expressly and impliedly warranted, via user manuals, marketing, advertisements, pamphlets, brochures, circulars, samples, and/or models that the Ovens are fit for the ordinary purpose for which such goods are used, including safely cooking food.

---

[9] https://www.geappliances.com/ge/about-ge-appliances/ (Last visited January 14, 2021).
[10] https://www.statista.com/statistics/220718/number-of-employees-at-general-electric/;
https://www.geappliances.com/ge/usa/#mia-wallOvens (Last visited Dec. 22, 2020).
[11] https://www.statista.com/statistics/220718/number-of-employees-at-general-electric/ (Last visited Dec. 22, 2020).

28.     GE expressly warranted that, for a period of one year from the date of the original purchase, it would provide, free of charge, all labor and related service costs to replace any defective parts of the Ovens that fail due to defects in materials or workmanship.

29.     Unknown to consumers, the Defect in the glass doors in the Ovens exists at the point of sale to consumers, and renders the Ovens unfit for the ordinary purpose for which they are sold.

30.     As a result of the Defect, the Ovens pose an unreasonable risk of harm to consumers and their property.

31.     The average service life of an oven should be at least thirteen years[12]; however, the Ovens prematurely fail months or years before the end of their expected service life due to the Defect.

32.     As a direct, proximate, and foreseeable result of the Defect, Plaintiff and Class Members suffered damages, including, but not limited to: (i) the difference in value of the Ovens as warranted and the Ovens received; (ii) loss of use of the Ovens; (iii) property damage; and (iv) consequential damages.

33.     Had the Ovens been properly designed and/or manufactured free of the Defect, Plaintiff and Class Members would not have suffered the damages in that they either would not have purchased their Ovens, or they would have paid less for them.

---

[12] *See e.g.* https://www.housebeautiful.com/lifestyle/g25319945/how-long-household-appliances-last/ (Last visited January 14, 2021); https://www.hwahomewarranty.com/learning-center/homeowners/how-long-will-appliances-last (Last visited January 14, 2021); https://www.bobvila.com/slideshow/this-is-how-long-each-of-your-major-appliances-should-last-52614 (citing National Home Builders)(Last visited January 14, 2021).

## THE DEFECT

34.     The Ovens are designed and/or manufactured with soda lime glass, which has a coefficient of thermal expansion of 82 $10^{-7}$ / $^0$C.

35.     When heated, the soda lime glass expands substantially more than glass manufactured with other, more suitable types of glass (e.g., borosilicate glass, which has a coefficient of thermal expansion of 32 $10^{-7}$ / $^0$C). This makes the glass doors in the Ovens significantly more prone to an abrupt and unexpected failure — breaking or shattering. This is because soda lime glass has a high coefficient of thermal expansion with very poor thermal shock resistance.

36.     Breaking or shattering occurs because soda lime glass cannot withstand nearly the same range of temperature changes as other, more suitable types of glass (e.g., borosilicate glass).

37.     Soda lime glass is significantly less expensive to produce than other types of glass (e.g., borosilicate) because both raw material and energy costs are lower. Unfortunately for unsuspecting consumers, a demonstrable reduction in quality and safety accompanies this reduction in costs.

38.     Because soda lime glass is peculiarly prone to cracking, breaking, shattering, or exploding when exposed to rapid changes in temperature (i.e., thermal shock), it is unsuitable for use in Ovens.

39.     In addition to being an improper material for use in the Ovens, Soda lime glass is further improper because it must be tempered, or heat-strengthened, to increase its thermal shock resistance. Tempering, however, is not a solution to the problems associated with soda lime glass in applications such as how it is used in the Ovens. Rather, tempering exacerbates the problems associated with soda lime glass, particularly if the Oven glass doors made with soda lime glass are

unevenly and/or poorly heated (i.e., tempered), or not heated to high enough temperatures to enhance the safety of the glass.

40.     As a manufacturer of the Ovens, and of numerous other household cooking appliances for more than 100 years, GE knew, or should have known, that glass can and does sustain minor damage in normal and expected use in Ovens. GE also knew, or should have known, that tempered soda lime glass is particularly susceptible to thermal shock failure and, therefore, inappropriate for use in glass oven doors, regardless of its reduced cost.

41.     Here, GE chose to use soda lime glass as a major component in the Ovens knowing that: (1) it would not properly protect against thermal shock failure, but would actually increase the risk of such failure over time with normal use; (2) it would not prevent shattering or breakage of the door; and (3) it would suffer from inconsistent surface compression stress and internal tension that can cause the glass to break or shatter, causing premature failure of the Ovens and potential injuries to consumers.

## PLAINTIFF'S ALLEGATIONS

42.     On March 20, 2018, Plaintiff Asher Haft purchased a GE 30" Built-In Single Convection Wall Oven from Town Appliance, located at 10 South Clifton Avenue, Lakewood, New Jersey 08701, (Model No. MH606730Q) for $1,175.00 plus tax. He purchased the Oven for normal, household use, and it has, in fact, been used at all times for normal household purposes and in a foreseeable manner.  Mr. Haft registered his Oven with GE after he purchased the Oven.

43.     Mr. Haft specifically purchased the Oven based on the GE name, reputation, positive online reviews, and price. When he selected this Oven in particular, he expected it would last several years, and that it did not contain a defect which would cause the glass door to shatter, posing a safety risk and rendering the oven unsafe.

44.     Shortly after his purchase, Mr. Haft's Oven was professionally installed in his kitchen and he proceeded to use it. He regularly used the Oven as intended until the date of the incident described below.

45.     On October 22, 2020, Mr. Haft's Oven was heated to 450 degrees when his wife heard a popping sound come from the kitchen. Mr. Haft and his wife opened the Oven door and discovered that the glass of the Oven door had cracked in multiple locations.



Plaintiff's shattered glass-front oven door (above)



Close-up view of Plaintiff's shattered glass-front oven door (above)



Alternate view of Plaintiff's shattered glass-front oven door (above)

46.     The shattered door rendered Plaintiff's Oven useless for its intended purpose, as it is not possible, nor safe, to use the Oven without the seal provided by the presence of intact glass to trap heat within the unit in order to reach the desired temperature to heat and/or cook food.

47.     Because GE unlawfully concealed the Defect from Plaintiff prior to his purchase, and later, after the Oven was installed and used in his home, Plaintiff did not suspect (and had no reason to suspect) that there was anything wrong with his Oven until the glass door shattered.

48.     Plaintiff's Oven did not operate safely for the full duration of its expected useful life because it contained the Defect at the time it was purchased. Had he known of the Defect, Plaintiff either would not have purchased the Oven, or would have paid less for it. Therefore, he did not receive the benefit of his bargain.

49.     Shortly after his Oven glass door shattered, Plaintiff contacted GE and requested that it pay for the costs associated with replacing the door, including labor and the cost of the replacement part(s). GE refused to provide full reimbursement, and instead agreed only to pay for the cost of labor after the work was completed.

50.     On November 3, 2020, after Plaintiff contacted GE, the shattered glass door was replaced by a service technician, and Plaintiff was charged $118.95 for the service call and $141.25 for the replacement part, plus $23.11 in tax, for a total of $283.31.

51.     After the glass door was replaced, Plaintiff again contacted GE to request reimbursement of his $283.31 out-of-pocket costs, and GE refused to provide full reimbursement, and instead reimbursed him only for the labor cost of $118.95, leaving Plaintiff with $164.36 of unreimbursed out-of-pocket costs, which would not have been incurred but for the Defect, which GE failed to disclose and failed to provide adequate remuneration.

### GE'S ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE DEFECT

52.     GE knew or should have known when it sold the Ovens to the public that they suffered from the Defect, were unsafe, could not be expected to function properly for the full duration of their expected useful life, represented an unreasonable risk that the glass would shatter, and represented an unreasonable and significant risk of personal injury and/or property damage to consumers and the public.

53.     Upon information and belief, GE's knowledge of these facts may be established through consumer complaints, including several years' worth of public Internet posts regarding the glass doors of the Ovens shattering during normal use. Despite its knowledge, GE did not remediate or eliminate the Defect in the Ovens or remove them from the stream of commerce. Further, GE failed to adequately compensate consumers for costs associated with replacing the glass, despite the fact that the Defect exists at the point of purchase.

54.     Indeed, over the years, there have been numerous reports of the Defect complained of in this action, which did or should have put GE on notice of the Defect. For example, in 2011, ABC7 News in San Francisco, California reported on a consumer's experience with the glass door

of her oven shattering and scattering in all directions.[13] GE was put on notice of the Defect via the consumer's warranty claim, which GE denied. GE confirmed its notice of the Defect through its response to the news agency, wherein it stated that "GE warns consumers about inadvertent damage to glass oven doors – including the potential for broken or shattered glass – in its Use and Care Guide."[14]  If any such disclosure is made, GE's inadequate consumer warning regarding the potential for broken or shattered glass is only relevant to the extent it constitutes an admission by GE that it is aware of the Defect and seeks to place the blame on consumers for broken or shattered glass resulting from the Defect.

55.     In 2012, a contributing columnist for the Toronto Star newspaper wrote a column complaining about the glass in her three-year-old oven door shattering.[15] GE again confirmed its awareness of the issue by responding to the author via Twitter.[16]

56.     In 2015, GE was put on further notice prior to the filing of this lawsuit when a high-profile investigation by ABC6 Action News in Philadelphia, Pennsylvania publicly addressed this very issue and drew a response from GE.[17]

57.     Customer complaints are also available online.  For example:

GE oven door glass shattered!

**bedelia**

**12 years ago**
I have a GE electric range that is 2 yrs. old. I was using the self-cleaning feature this week, and after 2 hrs., I heard a loud pop. I turned the oven off, and once I was able to open the door, saw that the inside glass window in the door had shattered into pieces.

I called GE, and the rep stated that this does happen sometimes. They sent a tech out at no charge to look at it. When he called in the report, they stated that I would

---

[13] https://abc7news.com/archive/8400304/ (last visited Dec. 22, 2020).
[14] *Id.*
[15] https://www.thestar.com/business/2012/07/20/when_ge_glass_oven_door_shatters_who_pays_for_repairs.html (last visited Dec. 22, 2020).
[16] *Id.*
[17] https://6abc.com/consumer-report-exploding-ovens/1060683/ (last visited Dec. 22, 2020).

have to pay $165 for labor costs to fix it. The glass itself would be at no charge. (My local service guy would charge me $165 for both labor and glass).

I was livid. I thought GE would stand behind its appliances, but apparently not. How can they market something that has this defect in it?

The tech suggested that I call myself (to see if it made any difference) and was told the same thing. I was told it was out of warranty, and that if they covered the labor, the tech would forfeit his pay for the service call. I never heard of such a thing.

$165 isn't going to put me in the poor house, but I think it's something that GE should stand behind.

Am I making a big deal out of nothing? Has anyone had a similar experience with GE? Any suggestions?

Sorry for ranting and raving, but I know I'll never buy another GE anything.[18]

*** 

We purchased a new GE induction slide-in range from HHGregg and they are no longer in business. The stove was purchased in February of 2017, today the oven glass door exploded... Glass was everywhere. Exploded inside the oven as well as outside. I was on the phone to GE for over 55 minutes and am very dissatisfied with GE customer service. This occurred on Thursday May 4th. We were told they would get somebody out here to look at the stove and the damage the following Wednesday which was six days from the time the incident was reported. I found that to be unreasonable given the fact that I have glass all over my kitchen. I wasn't certain if I should try to clean up the glass or if somebody wants look at the pattern of the glass to try to determine exactly what caused this to explode. Extremely dangerous situation.

A representative from GE customer service offered us a $50 check, which is laughable, for the inconvenience of having to wait several days before somebody can come out and take a look at the damage. It was also suggested that they would probably repair or replace the door. This was a $3,000 stove. I am not going to accept a repair on a $3,000 stove. I want the stove replaced with a safe brand. Do not purchase GE products!!! Plus I cut my leg on glass!![19]

58.     Rather than correcting the Defect by including safer and more appropriate

borosilicate glass, or paying for all costs associated with replacing the soda lime glass because the

---

[18]  https://www.houzz.com/discussions/2314627/ge-oven-door-glass-shattered  (emphasis added) (last visited Jan. 20, 2021).
[19] https://www.consumeraffairs.com/homeowners/ge_wall_oven.html?page=4 (last visited Jan. 20, 2021).

Defect exists at the time of purchase, GE instead refuses to cover the full costs of repairs, placing the burden on consumers.

59.     Because of its knowledge of the Defect, GE has a duty to disclose the Defect and to not conceal it from Plaintiff and Class Members. GE's failure to disclose, and/or active concealment of, the serious safety Defect places Plaintiff and Class Members at an unreasonable and unnecessary risk of personal injury and/or property damage.

60.     GE still markets and sells the Ovens, still conceals the existence of the Defect, still fails to notify consumers of the safety Defect, still fails to recall the Ovens, and still fails to cover the cost of replacing the glass once it breaks or shatters if it is outside of the one-year warranty period, despite the fact that the Defect exists at the time of sale.

61.     Moreover, GE continues to falsely represent through written warranties that the Ovens are free from Defect, are of merchantable quality, and will perform dependably for years, when the Defect exists at the time of sale, which his unknown to consumers and known to GE.

62.     When corresponding with customers, GE does not disclose that the Ovens suffer from the Defect, or that glass shattering events result from it. As a result, reasonable consumers, including Plaintiff and Class Members, purchased and used, and continue to purchase and use the Ovens in their homes even though it is unsafe to do so.

63.     When GE repairs the Ovens after the glass breaks or shatters, it fails to properly attribute the failure to the Defect, and merely replaces the defective glass door with an identical, equally defective part, which does not prevent the recurrence of the issue.

64.     Had Plaintiff, Class Members, and the consuming public known that the Ovens were defective and posed an unreasonable risk of harm to themselves and their property, and that

GE would not cover the costs associated with repairing the glass, they either would not have purchased the Ovens, or would have paid less for them.

65.     GE wrongfully places on Plaintiff and Class Members the burden and expense involved in discovering the Defect, repairing and replacing failed parts (potentially multiple times), and paying some or all of the out-of-pocket expenses occasioned by the Defect.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

66.     GE had actual knowledge for years that the Ovens contain defective glass that is prone to breaking or shattering.

67.     Although GE was aware of the dangerous Defect, it took no steps to warn Plaintiff or Class Members of such Defect and the dangers it posed.

68.     At least by 2011, if not earlier, GE had received knowledge that there were issues regarding the shattering of the Ovens' glass-front doors.

69.     Despite its knowledge, GE has fraudulently concealed the fact that the Ovens are defective, despite having a duty to disclose the existence of the Defect.

70.     GE made affirmative misrepresentations to consumers during the sales of the Ovens, including that the Ovens were free of defect.

71.     GE concealed material facts that would have been important to Plaintiff and Class Members in deciding whether to purchase the Ovens.  GE's concealment  was knowing, and it intended to deceive Plaintiff and Class Members to rely upon it. Accordingly, Plaintiff and Class Members reasonably relied upon GE's concealment of these material facts and suffered  injury as a proximate result of that justifiable reliance.

72.     The Defect in the design and/or manufacture of the Ovens was not reasonably detectible to Plaintiff and Class Members, unless there was a manifestation in the form of a breaking or shattering event.

73.     GE actively and intentionally concealed the existence of the Defect and failed to inform Plaintiff or Class Members of the existence of the Defect at all times, including when they contacted GE regarding problems with the Ovens.  Accordingly, Plaintiff and Class Members' lack of awareness was not attributable to a lack of diligence on their part.

74.     GE's statements, words, and acts were made for the purpose of suppressing the truth that the Ovens were manufactured with defective glass.

75.     GE concealed the Defect for the purpose of delaying Plaintiff and Class Members from filing a complaint on their causes of action.

76.     As a result of GE's active concealment of the Defect and/or failure to inform Plaintiff and Class Members of the Defect, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled. Furthermore, GE is estopped from relying on any statutes of limitations in light of its active concealment of the defective nature of the Ovens.

77.     Further, the causes of action alleged herein did not occur until Plaintiff and Class Members discovered that their Ovens had the Defect. Plaintiff and Class Members had no realistic ability to discern that the Ovens were defective until they learned of the existence of the Defect or suffered its manifestation. In either event, Plaintiff and Class Members were hampered in their ability to discover their causes of action because of GE's active concealment of the existence and true nature of the Defect.

## FED. R. CIV. P. 9(b) ALLEGATIONS
### (Affirmative and By Omission)

78.     Although GE is in the best position to know what content it placed on its website(s) and in marketing materials during the relevant timeframe, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

79.     WHO: GE made material misrepresentations and/or omissions of fact through its website representations, warranties, owner's manuals, labeling and marketing, statements and representations made by employees receiving warranty claims, and through statements and representations made by its authorized retailers of the Ovens, which include statements such as that the Ovens were not defective, were of high-quality, were suitable for their purpose of cooking and heating food, and would last as long, if not longer, than the average service life of any comparable oven.

80.     WHAT: GE's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Ovens are defective, are constructed with unsuitable soda lime glass, could break or shatter causing personal injury and/or property damage to Plaintiff and Class Members, were not of high-quality, could present a safety hazard when being used as intended, and could fail prior to the completion of their expected useful life. GE's employees and authorized agents and representatives made affirmative misrepresentations to Plaintiff and Class Members regarding the same qualities. Further, GE's conduct deceived Plaintiff and Class Members into believing that the Ovens are not defective, are high-quality, are safe to use, and will last at least as long as the full duration of their expected useful life. GE knew or should have known this information is material to reasonable consumers, including Plaintiff and Class Members in making their purchasing decisions, yet it omits any warning that the Ovens suffer from the Defect.

81.    WHEN: The material misrepresentations and/or omissions detailed herein were made prior to and available at the time Plaintiff and Class Members performed research on the Ovens to gather information that would aid them in selecting the best oven to purchase; prior to and at the time Plaintiff and Class Members purchased the Ovens, prior to and at the time Plaintiff and Class Members made claims after the glass broke or shattered, and continuously throughout the applicable Class periods.

82.    WHERE: GE's material misrepresentations and/or omissions were made on its website(s), through marketing materials, in warranties, in user manuals, on the labeling of the packaging, as well as through statements made by its employees and authorized retailers.

83.    HOW: GE made misrepresentations and/or failed to disclose material facts regarding the true safety risks of normal use of the Ovens in written form, electronic form, or conventional hardcopy form, as well as verbally through statements made by its employees and authorized retailers.

84.    WHY: GE made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase and/or pay for the Ovens, the effect of which was that GE profited by selling the Ovens to many thousands of consumers.

85.    INJURY: Plaintiff and Class Members purchased or paid more for the Ovens when they otherwise would not have absent GE's misrepresentations and/or omissions. Further, the Ovens continue to pose unreasonable safety risks and cause consumers to incur unnecessary and unreasonable out-of-pocket expenses when manifestation of the Defect occurs.

## CLASS ACTION ALLEGATIONS

86.     Plaintiff brings this action individually and as representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of the below-defined Classes:

> **Nationwide Class**:
> During the fullest period allowed by law, all persons residing in the United States who own or owned a GE oven featuring a glass-front door made with soda lime glass.
>
> **New York Class**:
> During the fullest period allowed by law, all persons residing in the State of New York who own or owned a GE oven featuring a glass-front door made with soda lime glass.

87.     Specifically excluded from these definitions are: (1) GE, any entity in which GE has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

88.     Plaintiff seeks only damages and equitable relief on behalf of himself and the putative Classes. Plaintiff disclaims any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiff and/or putative Class Members.

89.     Plaintiff reserves the right to modify the class definitions, if necessary, to include additional GE Oven models with the same Defect and/or other Ovens manufactured by GE with the common Defect, but bearing different brand names.

90.     **Numerosity**: Class Members are so numerous that joinder of all Members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of tens of thousands of people geographically disbursed throughout the United States and the State of New York. The number of Class Members can be determined by sales information and other

records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. Class Members are readily identifiable from information and records in the possession of GE and its authorized distributors and retailers.

91.   **Typicality**: The claims of the representative Plaintiff are typical in that Plaintiff, like all Class Members, purchased an Oven that was manufactured, marketed, advertised, distributed, and sold by GE. Plaintiff, like all Class Members, has been damaged by GE's misconduct in that, *inter alia*, he has incurred or will continue to incur damage as a result of overpaying for an Oven that was manufactured with defective glass, which makes the Oven unusable, inherently dangerous, and not fit for its intended use. Furthermore, the factual basis of GE's misconduct is common to all Class Members because it engaged in systematic fraudulent behavior that was deliberate, includes negligent misconduct, and results in the same injury to all Class Members.

92.   **Commonality**: Common questions of law and fact exist as to all Class Members. These questions predominate over questions that may affect only individual Class Members because GE acted on grounds generally applicable to all Class Members. Such common legal or factual questions include, *inter alia*:

(a)   Whether the soda lime glass used in the Ovens is defective;

(b)   Whether the Ovens are defectively designed and/or manufactured;

(c)   Whether GE knew or reasonably should have known about the defective glass used in its Ovens prior to distributing and selling them to Plaintiff and Class Members;

(d)   Whether GE knew or reasonably should have known about the defective glass used in its Ovens after distributing and selling the Ovens to Plaintiff and Class Members;

(e)   Whether GE concealed from and/or failed to disclose to Plaintiff and Class Members that defective glass is used in its Ovens;

(f)   Whether GE breached the implied warranty of merchantability;

(g)   Whether GE breached express warranties relating to the Ovens;

(h)   Whether GE's Product Warranty is unconscionable;

(i)   Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

(j)   Whether GE should be enjoined from selling and marketing Ovens containing defective glass;

(k)   Whether GE engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing Ovens containing defective glass; and

(l)   Whether GE engaged in false or misleading advertising by selling and/or marketing Ovens containing defective glass.

93.   **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of Class Members. He has no interests antagonistic to those of Class Members. Plaintiff retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

94.   **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met. GE will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the defective glass at issue. Plaintiff has standing to make this claim because he would consider purchasing another Oven provided that it was manufactured in such a way as to not suffer from the Defect, or if GE extended the warranty on the Ovens. GE acted and refused to act on grounds that apply generally to the Classes, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Classes as a whole.

95.   **Predominance and Superiority**: Plaintiff and Class Members all suffered and will continue to suffer harm and damages as a result of GE's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their

claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of their individual claims, it is likely that few Class Members could afford to seek legal redress for GE's misconduct. Absent a class action, Class Members will continue to incur damages, and GE's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

96.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

97.     GE acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes appropriate.

<u>**COUNT I**</u>
**Breach of Implied Warranties**
**(On Behalf of Plaintiff and the Classes)**

98.     Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1-97 as though fully set forth herein.

99.     GE is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Ovens. GE knew or had reason to know of the specific use for which the Ovens, as goods, were purchased.

100.     GE entered into agreements with retailers, suppliers, and/or contractors to sell its Ovens to be installed in Plaintiff and Class Members' homes.

101.    GE provided Plaintiff and Class Members with implied warranties that the Ovens were merchantable and fit for the ordinary purposes for which they were used and sold, and were not otherwise injurious to consumers.

102.    However, the Ovens are not fit for their ordinary purpose of providing reasonably reliable and safe use for the cooking and/or heating of food because, *inter alia*, the Ovens contain defective glass-front doors which break or shatter, preventing them from safely cooking and/or heating food without the risk of the glass shattering, which could injure the consumer, damage the consumer's property, and taint the food that the consumer was attempting to cook and/or heat. In fact, once the glass breaks or shatters, the Ovens are rendered entirely useless, as they cannot be used without an intact glass-front door to seal the Oven and keep the heat trapped within. Therefore, the Ovens are not fit for their particular purpose of safely cooking and/or heating food.

103.    The aforementioned problems associated with Ovens constitute safety risks, such that the Ovens are not safe, reliable cooking appliances, and therefore, there is a breach of the implied warranty of merchantability.

104.    Privity is not required because Plaintiff and Class Members are the intended beneficiaries of GE's warranties and its sale through retailers. GE's retailers were not intended to be the ultimate consumers of the Ovens and have no rights under the warranty agreements. GE's warranties were designed for and intended to benefit the consumer only and Plaintiff and Class Members were their intended beneficiaries.

105.    More specifically, GE's intention that its warranties apply to Plaintiff and Class Members as third-party beneficiaries is evident from the statements contained in its product literature, including its warranty.  Likewise, it was reasonably foreseeable that Plaintiff and consumer Class Members would be the intended beneficiaries of the Ovens and warranties.

106.   GE impliedly warranted that the Ovens were of merchantable quality and fit for such use. These implied warranties included, among other things: (i) a warranty that the Ovens manufactured, supplied, distributed, and/or sold by GE were safe and reliable for heating and/or cooking food; and (ii) a warranty that the Ovens would be fit for their intended use while they were being operated.

107.   Contrary to the applicable implied warranties, the Ovens, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe methods of heating and/or cooking food. Instead, the Ovens suffer from a defective design and/or manufacture, as alleged herein.

108.   GE's failure to adequately repair or replace the defective Ovens caused the warranty to fail in its essential purpose.

109.   GE breached the implied warranties because the Ovens were sold with the Defect, which substantially reduced and/or prevented the Ovens from being used for safe food preparation.

110.   GE was put on constructive notice about its breach through its review of consumer complaints and media reports described herein, and, upon information and belief, through product testing.

111.   Any efforts to limit the implied warranties in a manner that would exclude coverage of the Ovens is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Ovens is null and void.

112.   As a direct and proximate result of the foregoing, Plaintiff and Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT II
### Breach of Express Warranty
### N.Y. U.C.C. § 2-313
### (On Behalf of Plaintiff and the New York Subclass)

113.    Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1-97 as though fully set forth herein.

114.    Plaintiff and New York Subclass Members purchased Ovens either directly from GE or through retailers, such as Lowe's, Home Depot, Best Buy, Amazon, and other appliance retailers.

115.    GE is and was at all relevant times a "merchant" under N.Y. U.C.C. § 2-313.

116.    In connection with its sale of the Ovens, GE expressly warranted that the Ovens were free from defect at the time of purchase and suitable for heating and/or cooking food.

117.    The defectively designed and/or manufactured Ovens are subject to and otherwise covered by GE's Warranty, which applies to each Oven.

118.    Each of the Oven models has an identical or substantially identical warranty.

119.    GE was obligated, under the terms of the express warranty to replace the defective Ovens and/or defective glass for Plaintiff and Class Members.

120.    In its warranty, GE warrants that, for one year from the date of the original purchase, it "will provide, free of charge, all labor and in-home service to replace [a]ny [defective] part of the oven which fails due to a defect in materials or workmanship."

121.    GE unilaterally imposed the Warranty limitations and exclusions solely for its own benefit at the expense of Plaintiff and Class Members.

122.    GE's warranty representations are made online, on its packaging, through its Use and Care Manual, and its Warranty.

123.    The express written warranties covering the Ovens were a material part of the bargain between GE and consumers. At the time it made these express warranties, GE knew of the purpose for which the Ovens were to be used.

124.    GE breached the warranty because it improperly and unlawfully denies valid warranty claims, and it has failed or refused to adequately repair or replace the Ovens with non-defective units and/or non-defective glass.

125.    GE further breached its express warranties by selling Ovens that were, in actuality, not free of defect, not made from merchantable material and workmanship, unsafe for use, and could not be used for the ordinary purpose of heating and/or cooking food. GE breached its express written warranties to Plaintiff and Class Members in that the Ovens are defective at the time they leave the manufacturing plant, and on the first day of purchase, creating a serious safety risk to Plaintiff and Class Members, and by failing to disclose and actively concealing this risk from consumers.

126.    The Ovens that Plaintiff and Class Members purchased contained a Defect that created a serious hazard and damages, including shattering glass, loss of food, loss of the product, loss of use of the product, loss of the benefit of their bargain, and other property damage.

127.    The limitations and the exclusions in GE's Warranty are harsh, oppressive, one-sided, unconscionable and unenforceable, as described *supra*, particularly in light of the fact that GE knew that the Ovens suffered from the Defect described herein.

128.    Any attempt by GE to limit or disclaim the express warranty in a manner that would exclude coverage of the Defect is unconscionable as a matter of law because the relevant purchase transactions were tainted by GE's concealment of material facts. Thus, any such effort to disclaim, or otherwise limit, its liability for the Defect is null and void.

129.    Privity is not required because Plaintiff and each of the Class Members are the intended beneficiaries of GE's warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the Ovens and have no rights under the warranty agreements provided by GE. GE's warranties were designed for and intended to benefit the consumer only and Plaintiff and Class Members were the intended beneficiaries of the Ovens.

130.    More specifically, GE's manifest intent that its warranties apply to Plaintiff and consumer Class Members as third-party beneficiaries, is evident from the statements contained in its product literature, including its Warranty, which specifically states the Warranty applies to "the original purchaser and any succeeding owner for products purchased for home use within the USA." Likewise, it was reasonably foreseeable that Plaintiff and consumer Class Members would be the intended beneficiary of the Ovens and warranties.

131.    Moreover, GE was put on constructive notice about its breach through its review of consumer complaints and media reports described herein, and, upon information and belief, through its product testing.

132.    Upon information and belief, GE received further notice and has been on notice of the defective nature of the Ovens and of its breaches of warranties through customer warranty claims reporting problems with GE, consumer complaints at various sources, and its own internal and external testing.

133.    Despite having notice and knowledge of the defective nature of the Ovens, GE failed to provide complete relief to Class Members with Ovens more than one year old, failed to provide a non-defective replacement Oven or non-defective replacement glass to Plaintiff and Class Members, and otherwise failed to offer any appropriate repair or compensation from the resulting damages.

134.    GE breached its express warranty to adequately repair or replace the Ovens despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing the Ovens.

135.    To the extent that GE offered to replace, or did replace, the defective Ovens or glass, the warranty of replacement fails in its essential purpose given it is insufficient to make Plaintiff and Class Members whole because the warranty covering the Ovens gives GE the option to replace the Ovens and/or glass with identical, equally defective Ovens and/or glass. Specifically, in its course of business, GE often has opted to provide a replacement Oven or glass to complaining consumers; however, the replacement Oven or glass likewise contains the Defect, resulting in the same safety risks to the owners, and the same or similar damages can occur to the replacement Ovens and the owner's personal property. Accordingly, recovery by Plaintiff and Class Members are not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

136.    Many of the damages resulting from the defective Ovens cannot be resolved through the limited remedy of replacement, as incidental and consequential damages from loss of use, loss of the benefit of the bargain, and contaminated meals have already been suffered due to GE's conduct as alleged herein.

137.    Accordingly, recovery by Plaintiff and Class Members is not limited to the warranty of replacement, and they seek all remedies allowed by law.

138.    Had Plaintiff, Class Members, and the consuming public known that the Ovens contain defective glass, posed an unreasonable risk of harm to themselves and their property, would shatter or was prone to shattering, or that GE would not properly honor its warranty, they either would not have purchased the Ovens or would have paid less for them.

139.    Plaintiff and Class Members have performed all duties required of them under the terms of the express warranty, except as may have been excused or prevented through the conduct of GE or by operation of law in light of GE's conduct described throughout this complaint.

140.    GE was provided reasonable notice of the aforementioned breaches through Plaintiff's communications with GE regarding the Defect and its failure to provide adequate remuneration as a result of the Defect and via notice letters mailed on January 15 and 20, 2021, pursuant to N.Y. U.C.C. § 2-607(3)(a).

141.    GE received timely notice regarding the problems at issue in this litigation, and notwithstanding, it failed and refused to offer an effective and/or complete remedy.

142.    As a direct and proximate result of GE's breach of its express written warranties, Plaintiff and Class Members suffered damages and did not receive the benefit of the bargain and are entitled to recover compensatory damages, including, but not limited to the cost of inspection, repair, and diminution in value. Plaintiff and Class Members suffered damages at the point-of-sale stemming from their overpayment for the defective Oven, in addition to loss of the product and its intended benefits.

**<u>COUNT III</u>**
**(IN THE ALTERNATIVE)**
**Breach of Contract/Breach of Common Law Warranty**
**(On Behalf of Plaintiff and the Class)**

143.    Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1-97 as though fully set forth herein.

144.    To the extent GE's commitment is deemed not to be a warranty under the Uniform Commercial Code, New York's Uniform Commercial Code, or common law, Plaintiff pleads in the alternative under common law warranty and contract law.

145.    Plaintiff and Class Members purchased the Ovens from GE or through retailers such as Best Buy, Home Depot, Lowe's, Amazon, and other appliance stores and authorized retailers.

146.    GE expressly warranted that the Ovens were fit for their intended purpose and that they were free of defects, and suitable for safe heating and/or cooking food.

147.    GE made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff, Class Members, and GE.

148.    GE breached the warranties and/or contract obligations by placing the defective Ovens into the stream of commerce and selling them to consumers, when it knew the Ovens contained defective glass and were prone to shattering. These deficiencies substantially and/or completely impair the use and value of the Ovens.

149.    The deficiencies described existed when the Ovens left GE's possession or control and were sold to Plaintiff and Class Members. The deficiencies and impairment of the use and value of the Ovens was not discoverable by Plaintiff or Class Members at the time of purchase.

150.    As a direct and proximate cause of GE's breach of contract, Plaintiff and Class Members were harmed because they either would not have purchased the Ovens if they knew the truth about the defective condition of the Ovens, or they would have paid less for them.

## COUNT IV
### Violation of New York GBL §§ 349, *et seq.*
### (On Behalf of Plaintiff and the New York Subclass)

151.    Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1-97 as though fully set forth herein.

152.    GE's foregoing acts and practices, including its omissions, were directed at consumers.

153.    GE's foregoing deceptive acts and practices, including its omissions, were material, in part, because they concerned an essential part of the Ovens' intended use and safety. GE omitted material facts regarding the safety of the Ovens by failing to disclose that the glass-front doors contain defective glass that is prone to shattering. Rather than disclose this information, GE marketed the Ovens as safe for their intended purpose.

154.    The glass-front doors of the Ovens pose an unreasonable risk of breaking or shattering.

155.    GE did not disclose this information to consumers.

156.    GE's foregoing deceptive and unfair acts and practices, including its omissions, were and are deceptive acts or practices in violation of the New York's General Business Law § 349, Deceptive Acts and Practices, N.Y. Gen. Bus. Law 349, *et seq.*, by:

a.   Misrepresenting that the Ovens were fit for their intended purpose of heating and/or cooking food; and

b.   Omitting and failing to disclose its knowledge that the Ovens contained a Defect, in that the glass-front doors are prone to shattering.

157.    GE's business practices, in manufacturing, warranting, advertising, marketing and selling its Ovens while concealing, failing to disclose, suppressing or omitting material information, including the existence of Defect and GE's knowledge of it, all while continuing to misrepresent its Ovens as products that are safe for their ordinary and intended use and free of defects, constitutes the use of fraud, misrepresentation, and deceptive practices. These practices deceived Plaintiff and New York Subclass Members, causing them to lose money by purchasing GE's Ovens or paying more than they otherwise would, as herein alleged, and deceived and are likely to deceive the consuming public. Accordingly, GE's business acts and practices, as alleged herein, have caused injury to Plaintiff and New York Subclass Members.

31

158.    Plaintiff and New York Subclass Members suffered damages when they purchased the Ovens. GE's unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiff and New York Subclass Members who were unaware that the Ovens contained defective glass prone to breaking or shattering. GE's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

159.    Consumers, including Plaintiff and New York Subclass Members either would not have purchased the Ovens had it known about the Defect and likelihood of breaking or shattering, or would have paid less for them.

160.    As a direct and proximate result of GE's deceptive acts and practices, including its omissions, Plaintiff and New York Subclass Members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

161.    In addition, Plaintiff and New York Subclass Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

**COUNT V**
**Violation of New York GBL §§ 350, *et seq*.**
**(On Behalf of Plaintiff and the New York Subclass)**

162.    Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1-97 as though fully set forth herein.

163.    GE's foregoing acts and practices, including its advertising, were directed at consumers.

164.    Through the acts and conduct alleged herein, GE committed unfair or deceptive acts and practices, by falsely advertising and misleadingly representing that the Ovens are safe for their intended purpose. GE also committed unfair or deceptive acts and practices by omitting material information from its advertising and representations, including its failure to disclose that the glass-front doors contain defective glass that is prone to shattering, which is material because it concerns an essential part of the Ovens' intended use and safety.

165.    The glass-front doors of the Ovens pose an unreasonable risk of breaking or shattering.

166.    GE did not disclose this information to consumers in its advertising or representations.

167.    GE's foregoing, consumer-oriented, unfair or deceptive acts and practices, including its advertising, representations, and omissions, constitutes false and misleading advertising in a material way in violation of the New York's General Business Law § 350.

168.    GE's false, misleading, and deceptive advertising and representations include:

    a.    Misrepresenting and misleadingly advertising that the Ovens were fit for their intended purpose of heating and/or cooking food; and

    b.    Omitting and failing to disclose its knowledge that the Ovens contained a Defect, in that the glass-front doors are prone to shattering.

169.    GE's false, misleading, and deceptive advertising and representations of fact were and are directed at consumers.

170.    GE's false, misleading, and deceptive advertising and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

171.    GE's false, misleading, and deceptive advertising and representations of fact have resulted in consumer injury or harm to the public interest.

172.     Plaintiff and other New York Subclass Members were injured because (a) they would not have purchased the Ovens on the same terms if the true facts concerning the Defect had been known; (b) they would have paid less for the Ovens if the true facts concerning the Defect had been known; (c) the Ovens did not and cannot perform as promised due to the Defect; (d) they have lost the use of the Ovens due to the Defect; and (d) they have suffered property damage.

173.     On behalf of himself and New York Subclass Members, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

174.     GE's business practices, in manufacturing, warranting, advertising, marketing and selling its Ovens while concealing, failing to disclose, suppressing or omitting material information, including the existence of Defect and GE's knowledge of it, all while continuing to misrepresent its Ovens as products that are safe for their ordinary and intended use and free of defects, constitutes the use of fraud, misrepresentation, and deceptive practices. These practices deceived Plaintiff and New York Subclass Members, causing them to lose money by purchasing GE's Ovens or paying more than they otherwise would, as herein alleged, and deceived and are likely to deceive the consuming public. Accordingly, GE's business acts and practices, as alleged herein, have caused injury to Plaintiff and New York Subclass Members.

175.     Plaintiff and New York Subclass Members suffered damages when they purchased the Ovens. GE's unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiff and New York Class Members who were unaware that the Ovens contained defective glass prone to shattering. GE's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

176.     Consumers, including Plaintiff and New York Subclass Members either would not have purchased the Ovens had they known about the defect glass and likelihood of shattering, or would have paid less for them.

177.     As a direct and proximate result of GE's deceptive acts and practices, including its omissions, Plaintiff and New York Subclass Members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

178.     In addition, Plaintiff and New York Subclass Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court:

A.     Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.     Name Mr. Haft as Class Representative of the Classes;

C.     Name Plaintiff's counsel as Class Counsel for the Classes;

D.     Award damages, including compensatory, exemplary, and statutory damages, to Plaintiff and the Classes in an amount to be determined at trial;

E.     Permanently enjoin GE from engaging in the wrongful and unlawful conduct alleged herein;

F.     Award Plaintiff and the Classes their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

G.    Award Plaintiff and the Classes pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

H.    Award such further relief as the Court deems appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 20, 2021                         Respectfully submitted,

**GREG COLEMAN LAW PC**

*/s/ Alex R. Straus*
Alex R. Straus (NY Bar No. 5175419)
16748 McCormick Street
Los Angeles, CA 91436
T: 917-471-1894
alex@gregcolemanlaw.com

**GREG COLEMAN LAW PC**
Rachel L. Soffin*
Jonathan B. Cohen*
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
rachel@gregcolemanlaw.com
jonathan@gregcolemanlaw.com

**WHITFIELD BRYSON LLP**
Harper Segui*
900 W. Morgan Street
Raleigh, NC 27603
T: (919) 600-5000
F: (919) 600-5035
harper@whitfieldbryson.com

* pending *pro hac vice* admission

*Attorneys for Plaintiff*