USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ___1/5/2022___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

ASHER HAFT and ROBERT FISHER, *individually and* :
*on behalf of all others similarly situated,*                      :
                                                                   :
                                        Plaintiff,      :          1:21-cv-00506-GHW
                                                        :
                   -against-                            :          MEMORANDUM OPINION
                                                        :          AND ORDER
HAIER US APPLIANCE SOLUTIONS,                           :
INC. d/b/a GE APPLIANCES,                               :
                                                        :
                                        Defendant.      :

------------------------------------------------------------------ X

**GREGORY H. WOODS,** United States District Judge:

## I.      INTRODUCTION

Plaintiffs Asher Haft and Robert Fisher bought household wall and range ovens designed

and manufactured by Defendant Haier US Appliance Solutions Inc. d/b/a GE Appliances.  The

doors of those ovens were constructed with soda lime glass, which is prone to break or shatter.

Both of Plaintiffs' oven doors cracked after the one-year warranty period for repair or replacement

expired, resulting in Plaintiffs paying out-of-pocket to repair and replace the oven doors.  Plaintiffs

allege that Defendant knew that the soda lime glass oven doors were likely to fail but failed to

disclose that fact prior to their purchase of the ovens.

On behalf of themselves and putative New York, New Jersey, and Pennsylvania subclasses,

Plaintiffs bring claims for breach of warranty, breach of contract, and for violations of various state

consumer protection statutes.  Defendant moved to dismiss those claims.  Because Plaintiffs do not

sufficiently allege that the Defendant's one-year limitation on warranties should not be enforced,

Plaintiffs have not adequately pleaded claims for breach of warranty or breach of contract.

However, Plaintiffs' claims under New Jersey and Pennsylvania consumer protections laws may

proceed.

## II.     BACKGROUND AND PROCEDURAL HISTORY[1]

### A.  Defendant's Appliance Business and Relevant Warranties

Defendant Haier US Solutions, Inc. d/b/a GE Appliances ("Defendant" or "GE") is a home appliance company that "designs, manufactures, markets, advertises, distributes, and sells" its products, including wall and range ovens to consumers throughout the United States.  FAC ¶¶ 2, 4. On its website, GE represents that it is "America's #1 Appliance Brand," and that it "make[s] life better by designing and building the world's best appliances.  From design to production to service, our goal is to help people improve their lives at home."  *Id.* ¶¶ 20, 18.  It similarly states that it "make[s] appliances that work in service of you . . . . [W]hen we build our world-class refrigerators, dishwashers, ovens, washers and dryers—what we're really creating are good things, for life."  *Id.* ¶ 21.

Defendant's ovens—the appliance at issue in this case—come with certain warranties.  The warranties relevant to this case can be found on the fourth page of the ovens' user manual.[2]  An express warranty provision states

> For the period of one year from the date of the original purchase. GE will provide any part of the range which fails due to a defect in materials or workmanship.

---

[1] The facts are drawn from Plaintiffs' first amended complaint ("FAC"), Dkt. No. 31, and are accepted as true for the purposes of this motion to dismiss.  *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Here, Plaintiffs did not include the warranty language in the Complaint or any accompanying materials, but Defendant attached a GE oven user manual containing their warranties to its motion to dismiss.  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  Here, Plaintiffs expressly incorporate the warranties into their Complaint.  *See* FAC ¶¶ 30, 31 (explaining that GE expressly and impliedly warranted . . . that the Ovens are fit for the ordinary purpose for which such goods are used" and that "GE also expressly warranted that, for a period of one year from the date of original purchase, it would provide, free of charge, all labor and related service costs to replace any defective parts of the Ovens . . . .").  Notably, Plaintiffs remark that they are "uncertain whether the warranty attached to Defendants' Motion to Dismiss is identical to that included in the packaging" of the ovens sold to Plaintiffs.  Nevertheless, Plaintiffs "accept[] . . . as true" Defendants' arguments related to these warranties, and also restate the terms of those warranties in making their own arguments.  *See* Opp'n 9–10.  Thus, as Plaintiffs have not provided any other warranty terms—the interpretation of which is central to their breach of warranty and breach of contract claims—the Court will consider the terms of the warranties provided by Defendant.

> During this limited one-year warranty, GE will also provide, free of charge, all labor
> and in-home service to replace the defective part.

Dkt. No. 40, Ex. B at 4.  The same page also includes the following language

> Your sole and exclusive remedy is product repair as provided in this Limited
> Warranty.  Any implied warranties, including the implied warranties of
> merchantability or fitness for a particular purpose, are limited to one year or the
> shortest period allowed by law.

*Id.*  The user manual's table of contents, appearing on the manual's first page, includes an

entry for "**Warranty**" that is written in bold text and directs readers to page 4 of the manual.

## B.  Defendant's Soda Lime Glass Oven Doors

According to Plaintiffs, "each of the [Defendant's] Ovens contains common design and/or

manufacturing [d]efects that cause the glass on their doors to shatter."  FAC ¶ 29.  Specifically,

Defendant's ovens feature an outer window made of soda lime glass.  *Id.* ¶ 38.  When heated, soda

lime glass expands substantially more than other types of glass—it has a "high coefficient of thermal

expansion with very poor thermal shock resistance."  *Id.* ¶ 39.  Due to those characteristics, the glass

doors in the ovens cannot withstand the same range of temperature changes as other types of glass;

thus, the soda lime glass windows are prone to break or shatter.  *Id.* ¶ 40.  In addition, although

soda lime glass must be tempered (or "heat strengthened") to increase its "thermal shock

resistance," tempering can exacerbate those issues if the glass is "unevenly and/or poorly heated (i.e.

tempered), or not heated to high enough temperatures to enhance the safety of the glass."  *Id.* ¶ 43.

According to Plaintiffs, the proclivity of the soda lime glass to "crack[], break[], shatter[], or

explode[e]" renders the glass "unsuitable for use" in Defendant's ovens.  *Id.* ¶ 42.  Plaintiffs further

allege that "[a]s a manufacturer of the [o]vens, and of numerous other household cooking appliances

for more than 100 years, [Defendant] knew, or should have known" that the soda lime glass was

particularly susceptible to thermal shock failure" and that it was "inappropriate for use in glass oven

doors."  *Id.* ¶ 44.  However, Defendant "does not disclose that the Ovens suffer from the Defect."

*Id.* ¶ 76.   Plaintiffs further allege that the defects with the glass "typically manifest[]" after the expiration of GE's warranties.  *Id.* ¶ 45.

As of March 9, 2021, Defendant had not remediated or eliminated the defect in the ovens, nor had it "remove[d] them from the stream of commerce." *Id.* ¶ 67.

### C. Plaintiffs Purchase Defendant's Defective Ovens

<u>Plaintiff Asher Haft</u>

Plaintiff Haft, who lives in Brooklyn, New York, purchased his oven in from "Town Appliance" in Lakewood, New Jersey on March 20, 2018. *Id.* ¶ 47.  He paid $1,175 plus tax.  *Id.*  Mr. Haft purchased the oven based on the GE name, reputation, positive online review, and price.  *Id.* ¶ 48.  He was unaware of any defect in the soda lime glass oven door, and Defendant did not disclose any defect.  *Id.* ¶¶ 48, 53.  The oven was later installed in his kitchen, where he regularly used it.  *Id.* ¶ 49.

Over two years later, on October 22, 2020, Mr. Haft's oven door cracked in multiple locations while heated to 450 degrees.  *Id.* ¶ 50.  Mr. Haft was not able to use the oven after the door cracked and contacted Defendant to request that it pay for the costs associated with replacing the door.  *Id.* ¶ 52–53.  A service provider replaced the door and charged Mr. Haft $283.31— $141.25 for the replacement part, $118.95 for the service call, and $23.11 in tax.  *Id.* ¶ 52.  When Mr. Haft contacted GE to request reimbursement for the $283.31, they agree to reimburse only the $118.95 for the service call.  *Id.* ¶ 53.  He alleges that he would not have purchased the oven, or would have paid less for it, had he known of the defect.  *Id.* ¶ 56.

<u>Plaintiff Robert Fisher</u>

Fisher, a Pennsylvania resident, purchased his oven from a store in Wilmington, Delaware "[i]n or around January 2018".  *Id.* ¶¶ 14, 57.  Mr. Fisher similarly purchased his oven "based on the GE name, reputation, positive online reviews, and price." *Id.* ¶ 58.  He was also unaware of any

defect in the soda lime glass door, which Defendant similarly did not disclose. *Id.* The oven was installed in Mr. Fisher's home, where he regularly used it. *Id.* ¶ 59.

In July 2020, more than two years after he purchased the oven, Mr. Fisher noticed that the oven's glass door had cracked in several places. *Id.* ¶ 60. Mr. Fisher was unable to use the oven in that state. *Id.* ¶ 61. Mr. Fisher contacted a third-party service provider to replace the oven door, which it did, with the service visit costing $100, and the replacement parts costing $224. *Id.* ¶ 62. Mr. Fisher was not reimbursed for any portion of this amount because the glass cracked outside of the one-year limited warranty. *Id.* He alleges that he would not have purchased the oven, or would have paid less for it, had he known of the defect. *Id.* ¶ 65.

### D. Other Reports of Defective Oven Doors and Defendant's Responses

Plaintiffs allege that Defendant knew of the defective soda lime glass doors, and that its knowledge can be established "through consumer complaints, including several years[] of public Internet posts and warranty claims regarding the glass doors of the ovens shattering during normal use." *Id.* ¶ 67. For example, Plaintiffs point to a complaint published on www.houzz.com where a customer complained that her oven door "shattered" after she had used it for two years. *Id.* ¶ 71. According to that customer, GE refused to pay labor costs to repair the glass because the oven was "out of warranty." *Id.* In another complaint published on www.consumeraffairs.com, a customer stated that their oven glass door had "exploded."[3] *Id.*

There have also been several reports of the defect in regional press. For instance, in 2011, ABC7 News in San Francisco reported on a customer whose oven door had shattered and scattered

---

[3] That customer did not state that GE failed to cover the costs of the stove, however; instead, the customer expressed their frustration that they were offered only a $50 check "for the inconvenience of having to wait several days before someone c[ould] come out and look at the damage" and that they "would not accept a repair" but instead "want[ed] the stove replaced with a safe brand." *Id.*

glass in all directions. *Id.* ¶ 68. Defendant responded to the news agency and stated that it "warns consumers about inadvertent damage to glass oven doors—including the potential for broken or shattered glass—in its Use and Care Guide." *Id.* In addition, a contributing columnist for the Toronto Star newspaper wrote a column about the glass in her three-year-old oven door shattering in 2012. *Id.* ¶ 69. Defendant responded to the author of the article on Twitter. *Id.* And then, in 2015, ABC6 Action News in Philadelphia published a report regarding numerous products, including GE's ovens, that included faulty glass. *Id.* ¶ 70 & n.17. Defendant's statement regarding its Use and Care Guide also appeared in that story. *Id.* n.17.

**E.    Procedural History**

On January 20, 2021, Plaintiff Haft filed a complaint against the General Electric Company and Defendant (together, "Defendants"). Dkt. No. 1. Plaintiffs then filed an amended complaint on March 9, 2021 (the "FAC") that added Plaintiff Fisher as a party. Dkt. No. 31. Defendants moved to dismiss that amended complaint on April 13, 2021 ("Mot."). Dkt. No. 38. Plaintiffs filed their opposition on May 4, 2021 ("Opp'n"). Dkt. No. 42. On May 11, 2021, Defendants filed their reply ("Reply"). Dkt. No. 44.

On November 19, 2021, the parties stipulated to dismiss the General Electric Company as a defendant. Dkt. Nos. 57, 58. In a letter filed the same day, Plaintiffs explained that the General Electric Company had transferred all assets and liabilities, including liabilities relevant to this action, to Defendant. Dkt. No. 60. According to Plaintiffs, the allegations in the FAC "applied equally" to both Defendants, "and the dismissal of [the General Electric Company] has no material impact on the currently-pending motion to dismiss." *Id.*

## III.    LEGAL STANDARD

A complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim that does not

6

meet this pleading standard for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a motion filed under Rule 12(b)(6), the court accepts as true the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor.  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are inadequate.  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  And "[t]he tenet that a court must accept as true" a complaint's factual allegations does not apply "to legal conclusions."  *Id.*

To survive dismissal, a complaint must allege sufficient facts to state a plausible claim.  *Twombly*, 550 U.S. at 570.  A claim is plausible when the plaintiff pleads facts to support the reasonable inference that the defendant has acted unlawfully.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plaintiff's claim must be more than merely "speculative."  *Twombly*, 550 U.S. at 545.  And a reviewing court must "draw on its judicial experience and common sense" to determine plausibility.  *Iqbal*, 556 U.S. at 679 (citation omitted).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint."  *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999)).  But a court may consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference."  *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)).  A court may also consider a document "solely relie[d]" on by the plaintiff if it "is integral to the complaint."  *Id.* (quotation and brackets omitted).  A document is "integral to the complaint" if the complaint "relies heavily" on the document's "terms and effect."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); *see also Littlejohn v. City of N.Y.*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) (holding that a court may "consider the plaintiff's relevant filings with the EEOC" on a motion to dismiss if the filings "are integral to and solely relied upon by the complaint"

(quotation and brackets omitted)).  A plaintiff must "*rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough."  *Nicosia*, 834 F.3d at 231 (emphasis added) (quoting *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006)).

## IV.   DISCUSSION

### A.   Plaintiffs Do Not Sufficiently Plead a Breach of the Implied Warranty

Plaintiffs have not adequately pleaded a claim for the breach of the implied warranty because Defendant properly limited the scope of implied warranty to one-year.  Modification or disclaimer of implied warranties is permissible under the U.C.C. and the analogous relevant provisions adopted by New York, New Jersey, and Pennsylvania[4] so long as the exclusion is "by a writing and conspicuous." *Lake v. Ford Motor Company*, 2019 WL 5873887, at *4 (E.D.N.Y., 2019) (citing N.Y. U.C.C. Law § 2-316(2) (2021)); *see also Kenney v. Watts Regulator Co.*, 512 F.Supp.3d 565, 587 (E.D. Pa., 2021) (applying the same standard under Pennsylvania law) (citing 13 Pa. Stat. and Cons. Stat. Ann. § 2316(2) (2021)); *Russo v. Thor Industries, Inc.*, 2020 WL 5868801, at *2 (D.N.J., 2020) (applying the same standard under New Jersey law).  A term is conspicuous if "written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it.  Whether a term is 'conspicuous' or not is a decision for the court."  N.Y. U.C.C. Law § 1-201(10); N.J. Stat. Ann. § 12A:1-201(10); 13 Pa. Stat. and Cons. Stat. Ann. § 1201(10).  Moreover, to exclude or modify the implied warranty of merchantability, the New York, New Jersey, and Pennsylvania statutes require that the term "merchantability" be mentioned in the exclusion or modification.  N.Y. U.C.C. Law § 2-316(2) (2021); N.J. Stat. Ann. § 12A:2–316(2) (West 2021); 13 Pa. Stat. and Cons. Stat. Ann. § 2316(b) (2021).

---

[4] *See* N.Y. U.C.C. Law § 2-316(2) (2021); N.J. Stat. Ann. § 12A:2–316(2) (West 2021); 13 Pa. Stat. and Cons. Stat. Ann. § 2316(b) (2021).

The implied warranty here was properly limited because it was in writing, mentions merchantability, and is conspicuous.  The relevant warranty provision states:

> Your sole and exclusive remedy is product repair as provided in this Limited Warranty.  Any implied warranties, including the implied warranties of merchantability or fitness for a particular purpose, are limited to one year or the shortest period allowed by law.

Dkt. No. 40, Ex. B at 4.  That warranty expressly mentions the implied warranty of merchantability and is located on the fourth page of a fifteen-page manual titled in large bold letters "GE Electric Range Warranty" under a section subtitled in capital letters "EXCLUSION OF IMPLIED WARRANTIES"  *Id.*  Further, the first page of the manual includes a table of contents which lists "Warranty" in bold letters, directing readers to page four of the manual.  *Id.* at 1.  *See Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 200 (E.D.N.Y. 2010) (finding a warranty disclaimer in capital letters in a separate block mentioning merchantability conspicuous under New York law); *Telecom*, 280 F.3d at 184 (finding a contract clause in capital letters conspicuous under New Jersey law); *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 889 (E.D. Pa. 1996) (finding a warranty exclusion in boldface print in the middle of a thirty-seven page booklet conspicuous under Pennsylvania law).  Therefore, Defendant properly limited the implied warranties to one year.

Plaintiffs contend that the language limiting the warranties to "one year or the shortest period allowed by law" is unclear and permits Plaintiffs to bring a claim within the default statutory period of four years.  *See* Opp'n at 10.  However, the shortest period allowed by law is, in fact, one year. Each of the relevant state laws allows parties to reduce the limitation period to "not less than one year." N.Y. U.C.C. Law § 2-725(1) (2021); N.J. Stat. Ann. § 12A:2–275(1) (West 2021); 13 Pa. Stat. and Cons. Stat. Ann. § 2725(a) (West 2021).  Further, the same or similar terms have been found to be valid limitations of warranty periods.  *See Rice v. Electrolux Home Prod., Inc.*, 294 F. Supp. 3d 307, 315 (M.D. Pa. 2018) (finding a warranty limited to one year or the shortest period allowed by law was validly limited to one year under the analogous provision of the Maryland U.C.C.); *Amvest Corp. v.*

*Anderson Equip. Co.*, 358 F. App'x 344, 348–49 (3d Cir. 2009) (finding that "Pennsylvania legislature has expressly authorized a one-year period of limitation" under § 2725(a) of the state U.C.C.); *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 230 (S.D.N.Y. 2015) ("a manufacturer may limit implied warranties to the duration of their express warranty" under § 2-316 of the U.C.C.).  Defendant's warranty clearly limits the time period to one year, which is authorized by the statute as the shortest period allowed by law.

Plaintiffs also contend the warranty was not conspicuous because they received the manual containing the warranty after purchase and installation.  However, Plaintiffs have not alleged that the manual was unavailable to them prior to purchase, nor do they allege that they objected to the warranty after receiving the manual.  *See Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 478 (S.D.N.Y. 2010) (finding a warranty that was provided after the time of purchase was properly limited because there was "no indication that Plaintiff objected to the contract terms after familiarizing herself with the warranty").  Therefore, Defendant's modification of the implied warranties was sufficiently conspicuous.

### B.  Plaintiffs' Do Not Sufficiently Allege a Breach of Express Warranty

Similarly, Plaintiffs have not adequately pleaded a claim for breach of express warranty. "[B]reach of express warranty claims require (i) a *material statement* amounting to a warranty; (ii) the buyer's *reliance* on this warranty as a basis for the contract with his immediate seller; (iii) the *breach* of this warranty; and (iv) injury to the buyer *caused* by the breach."  *Avola v. Louisiana–Pacific Corp.,* 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013) (citing *CBS Inc. v. Ziff–Davis Pub. Co.,* 75 N.Y.2d 496 (1990) (emphasis in original)).

Here, Plaintiffs' claim fails on the third element:  they do not allege a breach of the warranty. The warranty reads:

> For the period of one year from the date of the original purchase, GE will provide
> any part of the range which fails due to a defect in materials or workmanship.  During

this limited one-year warranty, GE will also provide, free of charge, all labor and in-home service to replace the defective part.

Dkt. No. 40, Ex. B at 4.   Here, Plaintiffs have not pleaded that the soda glass oven doors failed within the year-long period in which Defendant was obligated to replace or repair the ovens; rather, the ovens failed more than two years after they were purchased.   FAC. ¶¶ 29, 49–50, 59–60.   Thus, by its plain language, Plaintiffs have not alleged a breach of the express warranty.

Despite their arguments to the contrary, Plaintiffs may not rely on general statements made on Defendant's website to plead a breach of the express warranty.   *See id.* ¶¶ 20–23, 143.   "While no formal wording is necessary to create an express warranty, there must be a representation of fact or specific promise about the product . . . ."   *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 9 (S.D.N.Y. 2020).   Accordingly, "phrases on packaging and advertisements such as 'Premium Quality,' 'Popular,' and 'Most Dependable' are mere puffery and not express warranties, as no reasonable consumer could rely on them as statements of fact."   *Id.* at 10*; see also*, *Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362 (AGS), 1996 WL 274018, at *6–7 (S.D.N.Y. May 22, 1996) (rejecting statements that a product was "popular" and "most dependable" as express warranties).

Plaintiffs point to statements on Defendant's website that it is "American's #1 Appliance Brand" and that when it builds its "world-class refrigerators, dishwashers, ovens, washers and dryers — what [its] really creating are good things, for life."   FAC ¶ 20–21, 144.   But simply being the #1 appliance brand does not provide any concrete representations about the quality of the ovens in this case.   *See Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 241 (S.D.N.Y. 2020) (finding the phrase "better lives for hens mean better eggs for you" failed to provide a concrete representation).   And the statement that Defendant makes products "for life" does not necessarily suggest that the oven would function for an individual's entire lifespan—such an assumption would not be reasonable.   *Cf.*, *Abraham v. Volkswagon of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986) (commenting that manufacturers know that its individual products will at some point fail).   Rather,

that phrase is more reasonably interpreted to mean that the defendant's *brand* of products can be used throughout an individual's life.  Without more express representations as to the specific ovens at issue, Plaintiff's allegations are insufficient to state a claim for breach of the express warranty.

### C.  Plaintiff's Have Not Sufficiently Pled that the One-Year Time Limitation for the Express and Implied Warranties Is Unconscionable.

In the alternative, Plaintiffs allege that the warranties' one-year time limitation is unconscionable and cannot be enforced.  However, they have not sufficiently pleaded unconscionability.  Uniform Commercial Code Section 2-302 outlines the standard for unconscionability and has been adopted by the three states at issue in this case.  That provision provides that "[i]f the court as a matter of law finds the contract" including a warranty "to have been unconscionable at the time it was made the court may refuse to enforce the contract . . . ."  UCC § 2-302; N.Y. U.C.C. § 2–302;  N.J. Stat. Ann. § 12A:2–302; 13 Pa. Stat. and Cons. Stat. Ann. § 2302(a).

"The basic test [for unconscionability] is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract."  UCC § 2-302 (cmt. 1).  Plaintiffs must plead both procedural and substantive unconscionability.  *See Shema*, 832 F. Supp. 2d at 201 ("To declare a contract clause unconscionable, New York courts typically require a showing that a contract is both procedurally and substantively unconscionable when made.") (quotation omitted); *Skeen*, 2014 WL 283628, at *14 ("The traditional rule, which New Jersey. . . appear[s] to follow in the latent defect context, is that a plaintiff must plead both substantive as well as procedural unconscionability"); *Harbison v. Louisiana-Pac. Corp.*, 602 F. App'x 884, 886-87 (3d Cir. 2015) ("To prove a contract clause was unconscionable, a plaintiff must show that the clause was both procedurally and substantively unconscionable").  Procedural unconscionability assesses the contract formation process, while substantive unconscionability concerns the content of the contract.  *Shema*, 832 F. Supp. 2d at 201.

More specifically, procedural unconscionability considers whether there has been a lack of meaningful choice to accept a challenged provision by evaluating a number of factors, including "(1) the size and commercial setting of the transaction; (2) whether there was a 'lack of meaningful choice' by the party claiming unconscionability; (3) the 'experience and education of the party claiming unconscionability;' and (4) whether there was 'disparity in bargaining power.'" *Dallas Aerospace*, 352 F.3d at 787 (2d Cir. 2003) (quoting *Gillman v. Chase Manhattan Bank*, 534 N.E.2d 824, 828 (N.Y. 1988)); *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 595 (D.N.J. 2016) ("Procedural unconscionability refers to unfairness in the formation of the contract, and may be shown by 'a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process.'") (quoting *Muhammad v. Cty. Bank of Rehoboth Beach, Del.*, 189 N.J. 1, 912 A.2d 88, 96 (2006)).

Substantive unconscionability requires "an analysis 'of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged.'" *Shema*, 832 F. Supp. 2d at 202 (quoting *Gillman v. Chase Manhattan Bank*, 534 N.E.2d 824, 829 (N.Y. 1988)).  In considering substantive unconscionability, courts ask whether there are "contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Harbison*, 602 F. App'x at 887; *see also* Skeen, 2014 WL 283628 at *13 ("In New Jersey, courts will find a contract term to be substantively unconscionable if the term is 'excessively disproportionate,' involving an 'exchange of obligations so one-sided as to shock the court's conscience.'") (quoting *Delta Funding Corp. v. Harris*, 189 N.J. 28, 55 (2006) (Zazzali, J., concurring in part and dissenting in part)).

Courts assess overall unconscionability by applying a "sliding scale" where "the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." *Shema,* 832 F. Supp. 2d at 201 (quoting *State v. Wolowitz,* 468 N.Y.S.2d 131,

145 (2d Dep't 1983)).  In other words, "where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required."  *Harbison*, 602 F. App'x at 886.

Here, Plaintiffs allege that defendants knew about the defective soda glass oven doors, and also that the defect "typically manifests after the expiration of GE's warranty."  FAC ¶ 45.  Courts faced with similar allegations related to a defendant's knowledge of a latent defect—many of which come out of the District of New Jersey[5]—are divided as to whether plaintiffs have successfully alleged that a time-limited warranty is unconscionable.  *See, e.g.*, *Amato v. Subaru of Am., Inc.*, No. CV 18-16118, 2019 WL 6607148, at *8 (D.N.J. Dec. 5, 2019) ("There is no question that this district is divided, particularly with regard to whether a defendant's knowledge that a product was defective when sold will suffice to allow a claim that a warranty's durational limitations are unconscionable.").

To start with, courts generally agree that a defendant's knowledge of a latent defect is not sufficient in and of itself to render a time-limited warranty unconscionable.  *See, e.g.*, *Vullings v. Bryant Heating & Cooling Sys.*, No. CV 18-3317, 2019 WL 687881, at *3 (E.D. Pa. Feb. 19, 2019) ("Plaintiff's assertions that Defendants knew of the defect likewise cannot, without more, suffice to establish substantive unconscionability."); *Henderson v. Volvo Cars of North America, LLC*, No. 09–4146, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010) (noting that a defendant's knowledge of a latent defect in a vehicle "does not alone make the time/mileage limitation unconscionable).  But courts vary in the degree of factual detail required for a plaintiff's to plausibly allege both procedural and substantive unconscionability in those circumstances.

For instance, *Henderson* found a time-limited warranty to be unconscionable where the Plaintiff alleged that defendants "were aware that model years 2003 through 2005" of a certain car

---

[5] Indeed, a significant body of case law on this topic has developed in that district.  *See Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432 at *10 (S.D.N.Y. Dec. 16, 2011) ("Much of the recent jurisprudence on this issue comes from the District of New Jersey . . .").

"suffered from a common design defect resulting in transmission problems," that "members of the Class had no meaningful choice in determining those time limitations," and that "a gross disparity in bargaining power existed as between [defendant] and Class members." *Id.* at *5, 9 n.6; *see also In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. CV 16-2765 (JLL), 2017 WL 1902160, at *12 (D.N.J. May 8, 2017) (concluding the plaintiffs had adequately pleaded unconscionability where they alleged that defendants knew of a latent defect and also that "they had no meaningful choice in determining temporal and/or milage limits of the [warranties].").

In *Alban v. BMW of N. Am.*, however, another court in the District of New Jersey found no unconscionability where plaintiffs had pleaded nearly identical facts.  No. CIV. 09-5398 DRD, 2011 WL 900114, at *9 (D.N.J. Mar. 15, 2011) ("*Alban I*").  There, the court reasoned that "Mr. Alban's bare-bones allegations that he 'had no meaningful choice in determining' the time and mileage limitation, and that 'a gross disparity in bargaining power existed'" were too conclusory to plead procedural unconscionability.  *Id.*  As to substantive unconscionability, it determined that "Mr. Alban's conclusory allegation that 'a 4 year/50,000 mile period is an unconscionably brief period to warrant sound insulation against a problem that should never arise,'" was similarly conclusory and insufficient.  *Id; see also Amato*, 2019 WL 6607148 at *7–10 (concluding that allegations that a warranty "unfairly shifted costs . . . to class vehicle purchasers" were too conclusory to plead substantive unconscionability, and that general allegations that there was a "disparity in bargaining power" and that purchasers "lack[ed] knowledge" of the defect were insufficient to plead procedural unconscionability).

Courts in the Second Circuit are similarly split.  In *Szymczak v. Nissan N. Am., Inc.*, the court followed *Henderson* to find that allegations that (1) defendants were aware of the radiator defect, (2) defendants sold the vehicles with knowledge of the defect and of the fact that the defect would not manifest itself until after the expiration of the express warranty, and (3) [plaintiffs] would have

"negotiated better terms in the purchase of their vehicles and the warranties had they been aware of the radiator defect"—apparently without more detail—were sufficient to allege that a warranty was unconscionable.  No. 10 CV 7493, 2011 WL 7095432 at *10 (S.D.N.Y. Dec. 16, 2011).  But in *Chiarelli*, the court adopted *Alban's* analysis to determine that similar allegations were insufficient to plead unconscionability. 2015 WL 5686507, at *7 n.5.[6]

Notably, both *Chiarelli* and *Alban* rely on the Second Circuit's decision in *Abraham v. Volkswagon of Am., Inc.*, 795 F.2d 238 (2d Cir. 1986)).  *See Chiarelli*, 2015 WL 5686507, at *7; *Alban v. BMW of North America, LLC*, No. 09-5398, 2010 WL 3636253, at *7 (D. N.J. Sept. 8, 2010) ("*Alban II*").[7]  In *Abraham*, the Second Circuit did not consider unconscionability when evaluating whether plaintiffs could state a claim for breach of warranty where they alleged defendants knew of a latent defect.  795 F.2d 238 at 250.  In determining that the plaintiffs in their case could not state a claim for breach of contract, the Second Circuit reasoned that

> Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time.  Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired.  A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

*Id.*

Read broadly, *Abraham* cautions against allowing product liability claims to proceed based solely on allegations that a defendant knew of a latent defect that would manifest after a warranty's expiration.  While it did not consider unconscionability, the Court agrees with *Chiarelli* and *Alban* that

---

[6] More specifically, *Chiarelli* determined that plaintiffs could not state a claim for unconscionability under Second Circuit precedent based solely on the defendant's knowledge of a defect.  *Id.* at *7.  In a footnote, it then commented that the Plaintiffs failed to allege procedural unconscionability in their complaint.  *Id.* at 7 n.5.

[7] The Court issued two orders on subsequent motions to dismiss in *Alban*—one in 2010 and the other in 2011—both of which determined that plaintiffs did not sufficiently plead unconscionability.  *See id.; Alban II*, 2011 WL 900114, at *9.

*Abraham's* holding should inform the Court's analysis.  In other words, when analyzing whether a time-limited warranty is unconscionable, courts should account for the fact that manufacturers always "know" that certain of its parts will fail after the expiration of a warranty.  That principle, in turn, suggests that a plaintiff cannot rely on conclusory allegations that a defendant knew of a latent defect alone to plead substantive unconscionability.  Were the court to permit claims to proceed on that basis, plaintiffs would essentially be allowed an end-run around *Abraham's* holding.  Namely, plaintiffs would be unable to successfully plead a claim for breach of warranty solely on the basis that a defendant knew some of its products would fail outside of the warranty period, but nevertheless would successfully allege unconscionability on that same basis and survive a motion to dismiss. *Abraham's* holding would prove relatively meaningless since a plaintiff would nearly always be able to survive a motion to dismiss by alleging unconscionability.

At the same time, however, *Abraham* cannot be read to entirely preclude a finding of unconscionability.  Circumstances could arise where a defendant so abused their knowledge of a latent defect to entirely rob a customer of the of the benefit of the warranty.  The question that remains, then, is *what degree* of factual circumstances must be alleged to sufficiently plead that a defendant's knowledge of a latent defect to sufficiently plead unconscionability?[8]  Is it the case that Plaintiffs must allege that Defendants knew that the product would fail after the warranty expired, but before the product life, in 80% of cases?  What about in 50% of cases?  What percentage of the products must fail and at what point in time?  How soon after the warranty period must the failure occur in order for the warranty period to be unconscionable?  Is it unconscionable is the product typically fails ten years after the warranty period?  A day?  And given that procedural and substantive unconscionability are evaluated on a sliding scale, *see Shema,* 832 F. Supp. 2d at 201, are there some

---

[8] Notably, cases like *Alban* and *Chiarelli* offer little insight into that question.  There, the allegations were highly conclusory, so the Court could easily conclude that they were insufficient to plausibly plead unconscionability

factual allegations that would suggest such significant enough degree of substantive unconscionability so as to survive a motion to dismiss, even if allegations of procedural unconscionability were more conclusory?

Here, the Court need not resolve such questions because, as in *Alban* and *Chiarelli*, Plaintiffs' allegations of procedural and substantive unconscionability are both highly conclusory. Among other things, they allege that "Plaintiffs and Class Members had no meaningful choice about the one-year time limit in the warranty," and that "GE failed and refused to extend the time limitation of the warranty to cover the Defect." FAC ¶ 92. Plaintiffs do not, however, provide any factual allegations in support—nowhere do Plaintiffs allege that they inquired about the warranty prior to purchasing the oven, for instance. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, Plaintiffs' allegations amount only to such threadbare recitals and conclusory statements, and are insufficient to plead procedural unconscionability. *See Amato*, 2019 WL 6607148, at *7–10 (determining allegations of the plaintiff's "inability . . . to bargain with the defendants" and "lack of meaningful alternatives" were too conclusory to state a claim).

Plaintiffs' allegations of substantive unconscionability fare no better. Plaintiffs allege, for instance, that "GE was aware that the Ovens were inherently defective, Plaintiffs and Class Members had no notice or ability to detect the Defect, . . . and GE knew that Plaintiffs and Class Members would bear the cost of correcting the defect." FAC ¶ 92. Those claims similarly lack requisite specificity to plausible plead substantive unconscionability. *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, No. CIV.A. 11-4429, 2012 WL 1574301, at *20 (D.N.J. May 3, 2012) (concluding that Plaintiffs had not sufficiently alleged that a time limited warranty was unconscionable where they alleged that "that Defendants knew of the defect, knew that the defect would not become apparent until after the

warranty expired, and that they concealed material information that prevented Plaintiff from bargaining for a warranty that would cover the known defect").

The Court gives the most weight to Plaintiffs' allegation that the defect "typically" manifests after the expiration of the warranty.  FAC ¶ 45.  That defendants knew the defect "typically" arises outside of the warranty period may suggest some degree of substantive unfairness.  But the term "typically" proves too vague to meaningfully suggest substantive unconscionability—is it the case that the defect in the soda glass doors manifests outside of the warranty period 51% of the time, or 99%?  Do 1% of the ovens typically fail after that period, or 99%?  Do those failures occur one day after the warranty period, or ten years?  The mere fact that some ovens fail after the warranty period does not plausibly allege that the warranty period is unconscionable.  Frankly, unless the law mandates lifetime warranties for all products (it does not), an allegation that a product fails after the warranty period expires simply cannot suffice to render a limited warranty unconscionable.  Without more concrete allegations of substantive unconscionability, that allegation fails to meaningfully tip the scales in Plaintiffs' favor—especially when viewed in conjunction with the Plaintiff's conclusory allegations of procedural allegations and the lack of other, non-conclusory allegations of substantive unconscionability.  Accordingly, Plaintiffs have not pleaded that the implied warranty's one-year time limitation is unconscionable.

### D.  Plaintiff Does Not Sufficiently Allege that the Warranties Failed in their Essential Purpose.

In addition, Plaintiffs do not sufficiently allege that the warranties failed in their essential purpose under U.C.C. § 2–719(2).[9]  U.C.C. § 2–719 allows parties to limit remedies available under a contract to repair or replace.  *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 475 (S.D.N.Y. 2010) (citing N.Y. U.C.C. Law § 2–719)).  Such a limitation is permitted "so long as the remedy does

---

[9] *See* N.Y. U.C.C. Law § 2-719(2); N.J. Stat. Ann. § 12A:2–719(2); 13 Pa. Stat. and Cons. Stat. Ann. § 2719(b).

not fail of its essential purpose, such as through the inability of the warrantor to repair defects." *Id.* (citing *Demorato v. Carver Boat Corp.*, 304 Fed. App'x 100, 102 (3d Cir. 2008)). "A limited remedy fails its essential purpose under section 2–719(2) if 'the circumstances existing at the time of the agreement have changed so that enforcement of the limited remedy would essentially leave plaintiff with no remedy at all.'" *Id.* (quoting *AT & T v. N.Y. City Human Res. Admin.*, 833 F. Supp. 962, 986 (S.D.N.Y. 1993); *see also* U.C.C., § 2–719, cmt. 1 (stating that "it is of the very essence of a sales contract that at least minimum adequate remedies be available" that preserve for a party "at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract").

Importantly, "U.C.C. § 2–719 'specifically addresses the quantum of remedies that must be available in the event of a *breach*.'" *City of New York v. Bell Helicopter Textron, Inc.*, No. 13 CV 6848, 2015 WL 3767241, at *8 (E.D.N.Y. June 16, 2015) (quoting *Shema*, 832 F. Supp. 2d 194, 203 (E.D.N.Y. 2010) (emphasis in original). That section does not "does not diminish the ability of sellers to disclaim warranties." *Id.; see also*, N.Y. U.C.C. § 2–719 cmt. 3 ("The seller in all cases is free to disclaim warranties in the manner provided in § 2–316."); *Brampton Textiles, Ltd. v. Argenti, Inc.*, 162 A.D.2d 314, 314, 556 N.Y.S.2d 647, 647 (1st Dep't 1990) ("While a contract for the sale of goods, by virtue of [section 2–719], must provide a fair quantum of remedies for breach, nothing in that section precludes parties to a contract from . . . excluding implied warranties").

As follows, numerous courts conclude that a plaintiff cannot allege a claim for failure of essential purpose where a cause of action occurs after the expiration of the warranty period—in those circumstances, the parties did not bargain for repair or replacement during the periods for which a warranty was disclaimed, cannot claim a breach, and it cannot be said that they are entitled to remedies for that breach such that the bargain failed in its essential purpose. *See In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, No. 1:14-CV-3722, 2015 WL 4591236, at *24 (D.N.J. July 29, 2015) ("Plaintiffs may not invoke the doctrine to void the durational limits of the [] Warranty.");

20

*Wisconsin Power & Light Co. v. Westinghouse Elec. Corp.*, 830 F.2d 1405, 1412 (7th Cir. 1987) ("A purchaser cannot claim that a warranty provision has failed of its essential purpose merely because a potential claim does not arise until after the warranty period has expired"); *Bos. Helicopter Charter, Inc. v. Agusta Aviation Corp.*, 767 F. Supp. 363, 374 (D. Mass. 1991) ("The better reasoned approach . . . is that 2–719(2) is inapplicable once the warranty has expired") (collecting cases)); *Wozniak v. Ford Motor Co.*, No. 2:17-CV-12794, 2019 WL 108845, at *3 (E.D. Mich. Jan. 4, 2019) ("To plead that a remedy failed its essential purpose, Plaintiffs must plead facts sufficient to allege that they sought the limited remedy in the warranty period and that the remedy was ineffective.").

Here, as discussed above, Plaintiffs do not adequately plead breach of warranty or that warranties are unconscionable.  Therefore, they have not pleaded an entitlement to remedies for such a breach, and it cannot be said that the warranties here failed in their essential purpose.  *See Against Gravity Apparel, Inc. v. Quarterdeck*, 699 N.Y.S.2d at 368, 369–70 ("Nor does UCC 2–719(2) avail plaintiff, since, the defect not having manifested itself during the warranty period, the warranty was never triggered, and it therefore cannot be said that the warranty failed of its essential purpose or that plaintiff was deprived of the benefit of his bargain"); *Shema*, 832 F. Supp. 2d at 203 ("[Section 2–719] does not help plaintiff because [plaintiff] is not seeking remedies for a breach of the contract. Indeed, it appears that [plaintiff] cannot claim a breach of the contract because under the severe terms of the bargain it struck to take the software 'as-is,' flaws in the software do not amount to a breach.").

### E.  Plaintiff Does Not Sufficiently Allege a Breach of Contract

Plaintiffs similarly fail to plead a common law breach of contract.[10]  To state a claim for breach of contract, Plaintiffs must allege (1) the formation of a contract; (2) performance by

---

[10] In their opposition, Plaintiffs agreed to dismiss the alternative claims for breach of common law warranty.  Opp'n at 16.

plaintiff; (3) defendant's failure to perform; and (4) resulting damage. *CSI Inv. Partners II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 413 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 56 (2d Cir. 2009). Here, however, the only contract that Plaintiffs identify in their Amended Complaint is the express warranty, FAC ¶ 174, and they do not argue otherwise in their opposition—indeed, in the opposition, they expressly cite to their allegations from their breach of the express warranty claim to support their arguments for breach of contract. *See* Opp'n at 14 (citing FAC ¶¶ 144–50). Because their allegations are insufficient to state a breach of express warranty, those allegations are similarly insufficient to allege a breach of that contract—Plaintiffs cannot evade the insufficiency of their allegations by restyling identical allegations and arguments as a breach of contract.[11] *Cf. Trisvan v. Heyman*, 305 F. Supp. 3d 381, 397 (E.D.N.Y. 2018) (dismissing fraud claims that were "based on the same" factual allegations and required plaintiffs to plead materially similar elements as the plaintiffs' unsuccessful personal injury claims).

Plaintiffs also fail to allege a breach of the covenant of good faith and fair dealing. "[T]he covenant of good faith and fair dealing is implicit in every contract," but "it cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights." *Consol. Edison, Inc. v. Ne. Utils.*, 426 F.3d 524, 529 (2d Cir. 2005) (quoting *Fesseha v. TD Waterhouse Inv'r Servs.*, 305 A.D.2d 268, 761 N.Y.S.2d 22, 23 (2003)); *see also* N.Y. U.C.C. § 1–304 cmt. 1 ("This section does not support an independent cause of action for failure to perform or enforce in good faith . . . . [T]he doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently

---

[11] Plaintiffs are correct to point out that claims for breach of warranty and breach of contract can theoretically be pleaded in the alternative. *See* Opp'n at 14–15. However, where the two claims are based on identical factual allegations, it is not the case that one would proceed when the other fails.

breached.").  Thus, a "plaintiff cannot invoke the covenant to erase or otherwise vary [a] disclaimer of warranties." *Roberts v. Weight Watchers Int'l, Inc.,* 217 F. Supp. 3d 742, 752 (S.D.N.Y. 2016), *aff'd,* 712 F. App'x 57 (2d Cir. 2017).

Here, Plaintiffs allege that Defendant breached the implied covenant by failing to inform Plaintiffs of the defective soda lime glass doors and for failing to repair that defect.  The Court has already determined that those allegations are insufficient to plead a breach of Defendant's obligations under the express and implied warranties, and Plaintiffs may not invoke the covenant of good faith and fair dealing to create obligations inconsistent with those the Court has already determined to be applicable to the warranties.  *See id.* (finding no breach of the implied covenant because "defendant's obligations under the implied covenant, as interpreted by the plaintiff, [would be] inconsistent" with terms that disclaimed any warranties); *Orange Transportation Servs., Inc. v. Volvo Grp. N. Am., LLC,* 450 F. Supp. 3d 311, 324 (W.D.N.Y. 2020) (claim that Volvo breached the covenant of good faith and fair dealing by failing to inform buyers of defective automotive parts was duplicative of breach of warranty claims based on same facts, and thus, not actionable). Accordingly, Plaintiffs fail to plead a breach of the implied covenant of good faith and fair dealing.

### F.  Plaintiff's Consumer Protection Claims May Proceed Under New Jersey and Pennsylvania Law, but Not New York Law.

#### 1.  Plaintiff Haft Does Not Sufficiently Establish Standing to Bring Claims Under N.Y. Gen. Bus. Law §§ 349 and 350.

Plaintiffs' allegations under NY GBL §§ 349 and 350 are not adequately pleaded because Plaintiffs fail to identify a sufficient connection between the alleged deceptive acts and New York.[12] GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or

---

[12] In their pleadings, both parties discuss the element of reliance in relation to the N.Y. Consumer protection statues. Reliance is not an element of a claim under GBL § 349.  *See In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.,* 175 F. Supp. 2d 593 (S.D.N.Y. 2001). However, reliance is required under GBL § 350.  *See Dash v. Seagate Tech. (U.S.) Holdings, Inc.,* 27 F. Supp. 3d 357 (E.D.N.Y. 2014). Regardless, because the court finds the Plaintiffs do not have standing to bring their claim, this issue is not addressed here.

commerce or in the furnishing of any service *in this state*," N.Y. Gen. Bus. Law § 349, and GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service *in this state*," N.Y. Gen. Bus. Law § 350 (emphasis added).  "Thus, to qualify as a prohibited act under the statute, the deception of a consumer must occur *in New York*." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 325 (2002) (emphasis added).

In *Goshen*, the New York Court of Appeals determined that GBL §§ 349 and 350 could not create liability where a plaintiff living in Florida purchased a product from a company based in New York, even though that company hatched a marketing scheme upon which the plaintiff relied to purchase the product in New York.  *Id.*  After *Goshen*, however, a split among courts developed as to whether a plaintiff must *complete* the relevant transaction in New York, or whether the victim may plead a claim by showing a sufficient connection between the deceptive conduct and the transaction, "requir[ing], for example, that a plaintiff actually view a deceptive statement while in New York," that a transaction is processed in New York, or that the parties had agreed that disputes regarding a transaction be determined under New York law.  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122–24 (2d Cir. 2013) (citing *Kaufman v. Sirius XM Radio, Inc.,* 474 Fed. App'x 5 (2d Cir. 2012)).  Neither test focuses on the domicile of the parties.  *Id.* ("[W]e think the appropriate test in this case is to focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than on the residency of the parties." (citation omitted).

Under either test, Plaintiffs fail to allege a sufficient connection between the transaction and New York.  First, though Haft resides in New York, he purchased the oven from an appliance store in New Jersey.  FAC ¶ 47.  Under the transaction test, the relevant location here would be New Jersey.  There is no dispute that the oven was purchased in New Jersey, and where the product was "delivered, installed, used, and where the glass shattered and was serviced," all followed after the completion of the transaction in New Jersey.  Opp'n at 19.  Nothing in Plaintiffs' pleadings

24

demonstrates that there is a sufficient connection between the transaction in New Jersey and the state of New York, thus Plaintiffs fail under the transaction-based theory.

Under the alternative test, Plaintiff Haft fails to allege a sufficiently strong connection between the deceptive conduct and New York state. While Haft alleges that he purchased the oven based on "the GE name, reputation, positive online reviews, and price," and that Defendants made material misrepresentation on their website, marketing materials, user manuals, package labels, and statements by employees and authorized retailers, *see* FAC ¶ 48, he does not allege that he, in fact, viewed those statements in New York, or that other aspects of the transactions had a connection to New York. *See In re GE/CBPS Data Breach Litig.*, No. 20 CIV. 2903 (KPF), 2021 WL 3406374, at *13 (S.D.N.Y. Aug. 4, 2021) ("The conduct could have occurred in New York—the state of which [the defendant] is a citizen . . . business—but it also could have occurred at [the defendant's] headquarters in Massachusetts or in any number of other locations, e.g., where Defendants maintain servers, where employees responsible for human resource management and/or information technology work, or where those involved in the Data Breach notification processes work."); *Wright v. Publishers Clearing House, Inc.,* 439 F. Supp. 3d 102, 110 (E.D.N.Y. 2020) (concluding that the plaintiff failed to plead a claim under GBL § 349 based on conclusory allegations that "[d]efendants hatched the deceptive scheme in New York; sent the relevant advertising materials from New York; and received payment and processed orders in New York").

Nor is it sufficient that Plaintiff Haft purchased the oven "for use in his home in Brooklyn." FAC ¶ 47. As *Goshen* states, "[the] General Business Law analysis does not turn on the residency of the parties. As both the text of the statute and the history suggest, the intent is to protect consumers in their *transactions* that take place in New York State." *Goshen*, 98 N.Y.2d at 325 (emphasis added). *Goshen* is silent as to whether the law is meant to protect the *use* of a particular product within the state—indeed, if the Court were to find that the GBL applied in these

circumstances, it could pave the way for claims to proceed any time a plaintiff alleges, for instance, that they ordered a product online and directed the vendor to ship the product to a New York address.  Given that *Goshen* expressly cautions against "an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of General Business Law § 349," *id.* at 325, the Court declines to allow Plaintiffs to rely only on such allegations here; Plaintiff must allege a stronger connection to the state of New York than the location of a product's delivery.  Accordingly, Defendant's motion to dismiss Haft's claims under N.Y. Gen. Bus. Law §§ 349 and 350 is granted.[13]

## 2.     Plaintiff Haft Alleges Sufficient Facts to State a Claim Under the New Jersey Consumer Fraud Act

Plaintiffs allege facts sufficient to state a claim under the New Jersey Consumer Fraud Act ("NJCFA").  "The NJCFA authorizes '[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act' to bring a private action."  *Chiarelli*, 2015 WL 5686507, at *14 (quoting N.J. Stat. Ann. § 56:8–19).  There are three elements a plaintiff must show to state a prima facie case under the NJCFA:  "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss."  *Id.* (citing *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 436 (D.N.J.2012)).  "[C]ourts have derived three broad categories of unlawful conduct: affirmative acts, knowing omissions, and regulatory violations."  *Mickens*, 900 F. Supp. 2d at 436.[14]

---

[13] The Court further notes that Plaintiff Haft brings claims on behalf of both New Jersey and New York subclasses based on the same transaction.  Though Plaintiffs do not expressly state that these two classes are pleaded as alternatives to each other, the fact that the *Goshen* cautions against expanding the scope of the New York GBL gives the court additional pause in contemplating whether Plaintiff can state claims under the GBL claims here.

[14] The stringent pleading restrictions of Federal Rule of Civil Procedure 9(b) apply to such a claim.  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367–368 (1997)); *see Frederico*

"A plaintiff asserting a claim based on an omission must demonstrate that the defendant '(1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment.'" *DeFillippo v. Whirlpool Corp.,* No. 118-CV-12523-NLH-AMD, 2019 WL 4127162, at *5 (D.N.J. Aug. 30, 2019) (quoting *Galo Coba, v. Ford Motor Company*, 932 F.3d 114, 124 (3d Cir. 2019)).

Plaintiffs argue that Defendant's failure to disclose the known defect in the soda glass is sufficient to plead a claim under the NJCFA. Whether those grounds are sufficient to plead a claim under "New Jersey precedent . . . is unclear." *Ponzio v. Mercedes-Benz USA, LLC,* 447 F. Supp. 3d 194, 244 (D.N.J. 2020). One line of cases concludes that plaintiffs are categorically prohibited from advancing NJCFA on the basis that defendants failed to disclose a latent defect. That line originated in *Perkins v. DaimlerChrysler Corp.,* where the Appellate Division of New Jersey's Superior Court determined that a plaintiff had not pleaded a claim under the NJFCA where a defect in an exhaust manifold manifested itself outside of the warranty period. 890 A.2d 997 (N.J. Super. Ct. App. Div. 2006). It reasoned, "recognizing a viable CFA claim in the circumstances presented would essentially compel manufacturers and sellers to warrant their products and component parts beyond that to which the parties expressly agreed." *Id.* at 1005. The court cautioned that lawsuits like the plaintiff's "if successful, not only would render inconsequential the warranty programs adopted by auto manufacturers and consented to by purchasing consumers, but would also have a tendency to extend those warranty programs for the entire life of the vehicle." 383 N.J. Super. 99, 112 (App. Div. 2006).[15]

---

*v. Home Depot*, 507 F. 3d 188, 200 ("Rule 9(b) requires a plaintiff to "allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation.").

[15] Numerous cases in the District of New Jersey have relied on *Perkins* to conclude that plaintiffs fail to state a claim where they allege that a latent defect manifested outside of the warranty period. *See Duffy v. Samsung Electronics America, Inc.,* No. 06–5259, 2007 WL 703197 (D.N.J. March 2, 2007) (concluding that plaintiffs failed to state a claim where they alleged that a microwave with a known latent defect was subject to a limited warranty that had expired at the time his microwave's defect became apparent); *Noble v. Porsche Cars N. Am., Inc.,* 694 F. Supp. 2d 333, 338 (D.N.J. 2010)

Other cases, however, have limited *Perkins's* holding.  For instance, in *Maniscalco v. Brother Int'l Corp.*, the District of New Jersey concluded that *Perkins* "stands for the proposition that merely alleging that the warranty is shorter than the industry standard useful life of the product does not state a claim under the CFA."  627 F. Supp. 2d 494, 501 (D.N.J. 2009).  It also distinguished its facts from those in *Perkins*, noting that in *Perkins*, the "substandard car part never actually failed, while in the present case Plaintiffs allege that their products did suffer the defect" and that "in *Perkins*, plaintiff did not allege that the defendant knew that its specific product contained a defect that would cause it to fail before that product's expected useful life."  *Id.* (citations omitted).  Focusing on the lack of any allegations that the defendant knew of the defect in *Perkins*, *Maniscalco* explained:

> If the New Jersey Supreme Court were faced with a situation where a manufacturer or seller of a product knew that its product had a defect which would cause it to fail before its expected useful life, and intentionally concealed that information from a purchaser, with the purpose of maximizing profit, I predict that the New Jersey Supreme Court would not be willing to find, as a matter of law, that the CFA was categorically inapplicable.

*Id.*

Here, the Court agrees that cases involving allegations that a defendant knew of a latent defect do not fall within *Perkins*' ambit.  That a defendant knew of defect and intentionally declined to disclose that defect to consumers suggests a higher degree of unlawfulness than cases where a defendant lacks such knowledge.  *See Coba v. Ford Motor Co.,* No. 12-1622 (DRD), 2013 WL 244687, at *9 (D.N.J. Jan. 22, 2013) ("The notion that a manufacturer would be absolved from liability for knowingly omitting a defect because it acknowledges the possibility of defects in its warranty is both illogical and contrary to the spirit of the [New Jersey CFA].").  And, as *Maniscalo* and New Jersey

---

(determining that plaintiffs could not state a claim because "at the time the defect manifested itself, Plaintiff's car was more than four (4) years outside of its original warranty").

state case law point out, the NJCFA has been broadly construed "in order to accomplish its remedial purpose, namely, to root out consumer fraud." *Lemelledo v. Beneficial Mgmnt. Corp. of Am.*, 150 N.J. 255, 264, 696 A.2d 546 (1997); *Maniscalco*, 627 F. Supp. 2d at 502 ("In New Jersey, broad CFA protection was envisioned by the legislature and has been recognized by the Supreme Court of New Jersey"). Given these broad protections, the Court declines to expand *Perkins'* holding to erect a categorical bar to bringing an NJCFA claim where a defect manifests itself outside of the warranty period.

Still, another line of cases concludes that plaintiffs cannot state a claim where the defendant fails to disclose a latent defect because the plaintiff cannot show ascertainable damages. *DeFrank v. Samsung Elecs. Am., Inc.,* No. CV1921401KMJBC, 2020 WL 6269277, at *10 (D.N.J. Oct. 26, 2020) (commenting that numerous federal cases "have limited NJCFA claims to defects which occur within the warranty period . . . largely because they concluded that the plaintiffs had not suffered damages"). Such cases often rely on language from *Perkins* declining to "interpret the CFA, beyond its present scope, to cover claims that the component part of a product, which has lasted through the warranty period, may eventually fail, would be tantamount to rewriting that part of the contract which defined the length and scope of the warranty period." 890 A.2d at 1005; *see also, e.g.*, *Noble v. Porsche Cars N. Am., Inc.*, 694 F. Supp. 2d 333, 338–39 (D.N.J. 2010) (relying on *Perkins* to conclude that Plaintiffs had not proven an ascertainable loss because "at the time the defect manifested itself, Plaintiff's car was more than four (4) years outside of its original warranty" and that it would "refuse[] to re-write a warranty that expired over four years ago."); *Nobile v. Ford Motor Co.,* No. CIV.A. 10-1890 PGS, 2011 WL 900119, at *6 (D.N.J. Mar. 14, 2011) ("Courts in New Jersey have held that where a vehicle component has outperformed the warranty period, the plaintiff cannot meet the pleading requirements for an 'ascertainable loss.'").

The Court questions such interpretations of *Perkins* because *Perkins* expressly determined that the plaintiff in that case *had* shown ascertainable damages—namely, because the plaintiff pleaded that the defective Jeep in question had a lower resale value than it would have if the defendant had used a more durable car part. 890 A.2d at 1004 ("Here, plaintiff alleged in her complaint that she suffered an ascertainable loss. She did not allege the nature of that loss, nor was she so required at [the motion to dismiss] stage."). More broadly, given that *Perkins* did not concern a defendant alleged to have known about the latent defect, that language did not consider whether customers had suffered any sort of monetary loss *because of* Defendant's concealment of the defect. But "when a manufacturer or seller has acted fraudulently, consumers cannot be said to have gotten the benefit of their bargain 'because parties to a contract do not usually treat the chance that they are lying to each other as a subject for their contract to allocate.'" *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 283–84 (S.D.N.Y. 2018) (citing Restatement (Third) of Torts: Liability for Economic Harm § 9 (Tentative Draft No. 2, 2014)). Thus, the Court agrees with the numerous cases that have determined a plaintiff can show an ascertainable loss where a latent defect manifests after the expiration of a warranty period. *See, e.g.*, *Maniscalco*, 627 F. Supp. 2d at 503 ("Plaintiffs do allege specific loss by including the cost of replacing their MFC machines"); *DeFillippo v. Whirlpool Corp.*, No. 1:18-CV-12523, 2019 WL 4127162, at *3, 8 (D.N.J. Aug. 30, 2019) (finding ascertainable loss where a plaintiff alleged that they had paid for the cost to repair and replace refrigerator parts after the expiration of its warranty). Thus, Plaintiffs are not categorically prohibited from bringing an NJCFA claim based on a defect that manifested after the expiration of a warranty due to an inability to allege ascertainable loss.

Plaintiffs have sufficiently pleaded such an NJCFA claim here. First, as to unlawful conduct, they sufficiently allege a fraudulent omission. They aver that Defendant knowingly concealed the defective soda lime glass doors, pointing to Defendant's response to customer complaints and news

stories discussing the soda glass defect.  FAC ¶¶ 66–72.  They further allege that Defendant concealed the defect when Plaintiffs purchased the ovens, and that they would not have purchased the ovens or would have paid less for them had they known of the defect.  *Id.* ¶¶ 55, 64.  Finally, Plaintiffs aver that the Defendant knows that the warranty is grossly inadequate to protect its customers.  *See e.g.*, *id.* ¶¶ 45, 74, 92.  Those allegations are sufficient to plead knowing concealment. *See DeFrank v. Samsung Elecs. Am., Inc.*, No. CV1921401KMJBC, 2020 WL 6269277, at \*4, 10 (D.N.J. Oct. 26, 2020) (finding allegations that a defendant "learned of the defect through consumer complaints" and failed to disclose the defect sufficient to plead this element).

As to ascertainable loss,[16] Plaintiffs allege, among other things, that they paid out-of-pocket to repair the ovens, and that they lost the benefit of their bargain.  *Id.* ¶¶ 52–53, 62, 152.  Such allegations are sufficient to show loss under the NJCFA.  *See DeFillippo*, 2019 WL 4127162, at \*503 (finding allegation that plaintiff paid for repairs was sufficient to show ascertainable loss); *Maniscalco*, 627 F. Supp. 2d at 503 (concluding ascertainable loss had been alleged where plaintiffs had to replace their machines and those replacements were not covered by the warranty).

Plaintiffs have also pleaded a causal nexus between the omission and their loss.  "[T]o survive a motion to dismiss, Plaintiffs are only required to put forth 'enough factual matter (taken as true) to suggest' the elements of the claim."  *Maniscalco*, 627 F. Supp. at 503 (quoting *Phillips v. County of Alegheny*, 515 F.3d, 224, 234 (3d Cir. 2008).  "In that connection, it is sufficient if a plaintiff avers that 'had the alleged [d]efect been disclosed, consumers would not have purchased [defendant's product].'"  *Id.* (quoting *McCalley v. Samsung Elecs. Am., Inc.*, No. 07–2141, 2008 WL 878402, at \*9,

---

[16] Defendant is mistaken when it argues that Plaintiffs must plead reliance to state a claim under the NJCFA.  *See* Mot. at 13–14.  The NJCFA "does not require proof that a consumer has actually relied on a prohibited act in order to recover. In place of the traditional reliance element of fraud and misrepresentation, we have required that plaintiffs demonstrate that they have sustained an ascertainable loss."  *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.,* 192 N.J. 372, 391, 929 A.2d 1076 (N.J. 2007).

(D.N.J. 2008)).  Here, Plaintiffs have done just that, alleging that they would not have purchased the ovens or that they would have paid less for them had they known of the soda glass defect.  FAC ¶¶ 55, 64.  Accordingly, Plaintiffs have sufficiently pleaded a claim under the NJCFA.  *See DeFillippo*, 2019 WL 4127162, at *8 ("[U]nder the allegations lodged in this case, where Scachetti has paid for repairs due to the alleged defect which existed at the time it was sold to the original buyer, still existed when Scachetti took possession of the refrigerator, and which was allegedly known to Whirlpool, Scachetti's NJCFA claim is not barred . . . ."); *DeFrank*, 2020 WL 6269277, at *10 (concluding that the plaintiffs had alleged an NJCFA claim where they alleged that defendants had knowledge of defective washer dryers that "were prone to failure after the warranty period").[17]

### 3.   Plaintiffs Alleges Sufficient Facts to State a Claim Under the Pennsylvania Unfair Trade Practice and Consumer Protection Law.

Plaintiffs sufficiently state a claim under the Pennsylvania Unfair Trade Practice and Consumer Protection Law ("UTPCPL").  The UTPCPL prohibits "unfair methods of competition" and "unfair or deceptive acts or practices."  73 Pa. Cons. Stat. § 201 *et seq.*  "Among those acts included in the definitions of 'unfair methods of competition' and 'unfair or deceptive acts or practices,' are:  (1) '[r]epresenting that goods or services have sponsorship, approval, characteristics,

---

[17] There is no incongruity between that determination and the Court's determination that Plaintiffs have failed to sufficiently plead unconscionability and failure of the warranty's essential purpose, even though all of these issues involve Defendant's knowledge of latent defect.  Unconscionability and failure of essential purpose analyses look to the contractual terms of the warranty itself:  to sufficiently allege unconscionability, Plaintiffs are required to show that the *terms* of the warranty were so unfair as to be unenforceable—an inquiry that requires Plaintiffs to demonstrate highly one-sided terms.  UCC § 2-302 (comments) ("The basic test [for unconscionability] is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the *clauses* involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.") (emphasis added).  Similarly, to plead that the warranty provision fails in its essential purpose, Plaintiffs must allege that a *remedy* to which they were entitled *under the terms of the contract* necessarily would have failed.  *City of New York v. Bell Helicopter Textron, Inc.*, No. 13 CV 6848 RJD SMG, 2015 WL 3767241, at *8 (E.D.N.Y. June 16, 2015) (quoting *Shema*, 832 F. Supp. 2d 194, 203 (E.D.N.Y. 2010) (emphasis in original) ( "U.C.C. § 2–719 'specifically addresses the quantum of remedies that must be available in the event of a *breach*.").  Here, as previously discussed, Plaintiffs have not done so.
By contrast, claims under the NJCFA do not depend on the parties' contractual obligations—the elements of an NJCFA claim are independent from any contractually-based claims.

ingredients, uses, benefits or quantities that they do not have;' (2) '[r]epresenting that goods or services are of a particular standard, quality or grade . . . if they are of another;' and (3) '[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.'" *Burke v. Honeywell Int'l, Inc.,* No. CV 15-1921, 2016 WL 1639820, at *7 (E.D. Pa. Apr. 26, 2016) (quoting 73 Pa. Cons. Stat. §§ 201-2(4)(v), (vii), (xxi)).  To state a claim under the "catchall" provision of the UTPCP—the provision that prohibits "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding"—a plaintiff must allege that:  "(1) the defendant engaged in deceptive conduct; (2) plaintiff justifiably relied on defendant's misrepresentation or deceptive conduct; and (3) plaintiff was damaged by his justifiable reliance on the defendant's alleged conduct." *DeSimone v. U.S. Claims Servs., Inc.,* No. CV 19-6150, 2020 WL 1164794, at *4 (E.D. Pa. Mar. 11, 2020).

Here, in pleading their UTPCPL claim under the catchall provision, Plaintiffs rely on Defendant's failure to disclose the defect in the soda glass oven doors.  *See* FAC ¶ 235.  "[A] prerequisite for omissions to be actionable under the UTPCPL is the presence of a fiduciary duty or some other confidential relationship." *Id.*  "Pennsylvania courts have held 'that a duty to speak exists, in the context of a business transaction with an ordinary non-business consumer, when the seller has superior knowledge of a material fact that is unavailable to the consumer.'" *In Re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.,* No. 14 CIV. 6228 (VSB), 2021 WL 3371938, at *21 n.22 (S.D.N.Y. Aug. 3, 2021) (citing *Zwiercan v. Gen. Motors Corp.,* No. 3235 JUNE TERM 1999, 2002 WL 31053838, at *4 (Pa. Com. Pl. Sept. 11, 2002)).[18]

---

[18] "A plaintiff alleging deceptive conduct may proceed without satisfying the particularity requirement of Federal Rule of Civil Procedure 9(b)." *Vassalotti v. Wells Fargo Bank, N.A.,* 732 F.Supp.2d 503, 511 (E.D.Pa.2010).  "Therefore, Rule 8, as interpreted by the Supreme Court in *Iqbal,* 129 S.Ct. at 1949, governs this claim." *Goleman,* 2011 WL 3330423, at *8).

Here, Plaintiffs sufficiently allege a claim under the catchall provision of UTPCPL. As an initial matter, Plaintiffs have sufficiently pleaded Defendant's prerequisite duty to speak, since Plaintiffs plead that Defendant knew of the defective soda glass doors, and failed to disclose that knowledge to consumers. *See, e.g.*, FAC ¶ 76; *see also Zwiercan*, 2002 WL 31053838, at *3 (finding that automobile dealer had a "duty to speak" when it failed to disclose allegedly defective seats to "ordinary purchaser[s] of an automobile" due to the dealer's relatively superior knowledge).

Moving on to the first element of a claim under the UTPCPL—deceptive conduct— Plaintiffs need only plead an act "causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services." 73 P.S. § 201–2(4)(ii)). Here, Plaintiffs have alleged that Defendant failed to notify customers of the defective soda glass doors. *See, e.g.*, FAC ¶ 76. From that, it is reasonable to infer that a customer would be confused or misunderstand the quality of their oven. *See Dukich v. IKEA US Retail LLC*, No. CV 20-2182, 2021 WL 1534520, at *7 (E.D. Pa. Apr. 19, 2021) (concluding, in case where IKEA did not notify customers of certain product failures, that the "failure to notify customers about the recalls is sufficient to constitute deceptive conduct").

Plaintiffs also sufficiently plead that they relied on Defendant's failure to disclose the defect in purchasing the ovens. "[A] plaintiff can establish omission-based reliance—i.e., reliance on a statement that was never uttered—by showing 'that they would not have purchased a product had they been aware of the defect.'" *Miller v. Hyundai Motor Am.*, No. 15-CV-4722 (TPG), 2017 WL 4382339, at *9 (S.D.N.Y. Sept. 29, 2017) (interpreting the UTPCPL)); *see also Drayton v. Pilgrim's Pride Corp.*, No. CIV.A. 03-2334, 2004 WL 765123, at *7 (E.D. Pa. Mar. 31, 2004) (concluding that reliance had been sufficiently established where "Defendants allegedly knew their product was adulterated and therefore dangerous" but failed to disclose that information to consumers). Here,

Plaintiffs allege that Plaintiff Fisher would not have purchased the oven or would have paid less for it had he known of the defect. FAC ¶ 65. Thus, they have sufficiently alleged reliance.

Finally, and as previously discussed, Plaintiffs sufficiently allege that Plaintiff Fisher suffered damages as a result of his reliance. Plaintiffs allege that he paid $324.00 to repair his oven, and also that he would have paid less for the oven had he known of the defect. FAC ¶¶ 62, 65. Those allegations are sufficient to plead the third element of a UTPCPL claim. *See Dukich*, 2021 WL 1534520, at *6 (finding plaintiffs had pleaded loss where, due to defendant's omission, they were unable to receive a refund for certain products).

Accordingly, Plaintiffs have sufficiently pleaded a claim under the UTPCPL.

## V.        INJUNCTIVE RELIEF

Finally, Plaintiffs have not alleged standing to pursue injunctive relief. "Injunctive relief is only proper when a plaintiff, lacking an adequate remedy at law, is likely to suffer from injury at the hands of the defendant if the court does not act in equity." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146–47 (2d Cir. 2020). "The prospective-orientation of the analysis is critical: to maintain an action for injunctive relief, a plaintiff 'cannot rely on past injury . . . but must show a likelihood that he . . . will be injured in the future.'" *Id.* (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)). "If the injury occurred in the past—or if some future injury is merely conjectural or hypothetical—then plaintiffs will lack the kind of injury necessary to sustain a case or controversy, and necessary to establish standing, under Article III." *Id.*

In *Berni*, the Second Circuit considered whether the plaintiffs had standing to request injunctive relief in a putative class action on the basis that the defendant, well-known pasta-maker Barilla, had underfilled its pasta boxes. *Id.* at 144. The Second Circuit recognized that

> past purchasers of a product . . . are not likely to encounter future harm of the kind that makes injunctive relief appropriate. In the first place, past purchasers are not bound to purchase a product again—meaning that once they become aware they have been deceived, that will often be the last time they will buy that item. . . . No

matter how ubiquitous Barilla pasta may be, there is no reason to believe that all, or even most, of the class members—having suffered the harm alleged—will choose to buy it in the future.

*Id.* at 147–48.  Thus, it determined that Plaintiffs—past purchasers of Barilla pasta—had not established standing to claim injunctive relief on behalf of a purported class.

      *Berni* controls the result here.  Both Plaintiff Haft and Plaintiff Asher are past purchasers of Defendant's ovens and have not pleaded that they are likely to purchase the oven in the future.  Nor is it likely that they would do so, given their allegedly negative experiences with Defendant's ovens.  Thus, they lack standing to pursue injunctive relief.  *See id; see also Quintanilla v. WW Int'l, Inc.*, No. 20 CIV. 6261 (PAE), 2021 WL 2077935, at *6 (S.D.N.Y. May 24, 2021) (concluding that plaintiffs lacked standing to pursue injunctive relief where they had previously purchased weight-loss program subscriptions).[19]

## VI.   LEAVE TO AMEND

      The Court grants Plaintiff leave to replead the dismissed claims.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  While leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," those circumstances do not apply in this case.  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted).  Any amended complaint must be filed no later than fourteen days from the date of this order.

---

[19] Plaintiffs also rely on *Wai Chu v. Samsung Elecs. Am., Inc.,* No. 1:18-CV-11742-GHW, 2020 WL 1330662, at *4 (S.D.N.Y. Mar. 23, 2020), but that case was decided prior to *Berni.*  Accordingly, the Court declines to give *Chu's* finding significant weight.

**VII.     CONCLUSION**

Defendant's motion to dismiss is granted in part and denied in part.  As stated above,

Plaintiffs have not sufficiently alleged claims for breach of warranty or breach of contract and

Defendant's motion to dismiss is granted as to Counts I, II, and III in the Amended Complaint.

Similarly, Plaintiffs have not adequately pleaded claims under the New York General Business Law,

and Defendant's motion to dismiss is granted as to Count IV of the Amended Complaint.

However, Plaintiffs have sufficiently alleged violations of the NJFCA and UTPCPL, and

Defendant's motion to dismiss Counts V and VI is granted.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 38.

SO ORDERED.

Dated:  January 5, 2022
New York, New York

_____
GREGORY N. WOODS
United States District Judge