USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/27/2022

**Wheeler Trigg O'Donnell LLP**

Marissa S. Ronk
303.244.0123
ronk@wtotrial.com

January 26, 2022

**VIA ECF**
Hon. Gregory H. Woods

    Re:    *Haft v. GE Appliances*, Case No. 1:21-cv-00506

Dear Judge Woods:

    Pursuant to the Court's Individual Rules and its Order dated January 21, 2022, Defendant Haier US Appliance Solutions Inc. d/b/a GE Appliances ("GEA") writes in support of Plaintiffs' request that the Court authorize limited redactions in the Second Amended Complaint. The Complaint contains or references materials GEA designated as "CONFIDENTIAL" under the Stipulated Protective Order, ECF No. 43 ("Order"). Below, GEA provides detailed explanations and a declaration supporting the need to maintain the confidential nature of these documents. These explanations show that the proposed redactions reference documents entitled to protection from disclosure under Federal Rule 26(c)(1)(G). Plaintiffs do not oppose this request.

    The district court enjoys "considerable discretion" in determining whether to seal or redact documents. *Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000); *see generally* Fed. R. Civ. P. 5.2(e); Fed. R. Civ. P. 26(c). Courts in the Second Circuit follow a three-part analysis to decide whether a document should be publicly-available. *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 119-20 (2d Cir. 2006). First, the court must decide whether the documents are "judicial documents," to which the public has a presumptive right of access. *Id.* at 119. To be considered judicial documents, the documents must be "relevant to the performance of the judicial function and useful in the judicial process." *Id.* (citation omitted). Second, if the court determines that the materials are judicial documents, then the court must determine the weight of the presumption of access. *Id.* "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995). Finally, "the court must 'balance competing considerations against [sealing].'" *Lugosch*, 435 F.3d at 120 (citation omitted). Courts "routinely seal documents to prevent the disclosure of confidential business information." *News Corp v. CB Neptune Holdings, LLC*, 2021 WL 3409663, at *2 (S.D.N.Y. Aug. 4, 2021) (collecting cases).

    GEA submits there is minimal value of such information to the public, and genuine commercial risk to GEA if the documents are unsealed. *See id.* Specifically:

**WheelerTriggO'Donnell LLP**

January 26, 2022
Page 2

**1. GEA-Haft_005326**: These are Consumer Relations and Field Service records and contain proprietary, "competitively sensitive engineering, technical, or commercial business information." Order ¶ 2(d). These records reveal categories of data that GEA records and analyzes for consumer complaints; warranty and job codes GEA developed; and how GEA resolved specific customer issues. Filing an unsealed copy would competitively disadvantage GEA by exposing its internal data collection and resolution processes to the public, including competitors. (*See, e.g.*, Cleary Decl., Ex. 1, ¶ 3.)

**2. GEA-Haft_005335–5336**: These are Safety Database records of glass breakage. They contain proprietary, "competitively sensitive engineering, technical, or commercial business information." Order ¶ 2(d). These records reveal categories of product, consumer, and incident data that GEA records and analyzes when evaluating consumer-raised safety concerns; GEA's action items and follow-up notes to ensure continuity of records and promote the ongoing development of safety-driven solutions; and how GEA resolved specific customer issues. Filing an unsealed copy would competitively disadvantage GEA by exposing its internal recordkeeping, data collection, and event resolution processes to the public, including competitors. (*See, e.g.*, Cleary Decl. ¶ 3.)

**3. GEA-Haft_007189–7190**: This is a draft copy of Association of Home Appliance Manufacturers ("AHAM") minutes from a special task force meeting. AHAM meeting minutes are only distributed to member organizations, whose representatives are instructed to keep those minutes confidential even after they have been finalized. (*See, e.g.*, Cleary Decl. ¶ 5.) These draft minutes constitute "information received in confidence from third parties that has been kept in confidence." Order ¶ 2(e). Filing an unsealed copy would force GEA to violate AHAM's confidentiality practices and would put GEA's AHAM relationships at risk, which would competitively disadvantage GEA by making it more difficult for it to stay up to date on design issues and trends in the appliance industry. (*See, e.g.*, Cleary Decl. ¶ 5.)

**4. GEA-Haft_007271–7273**: These GEA emails discuss ways that GEA sorts and analyzes damage data. They constitute "competitively sensitive engineering, technical, or commercial business information." Order ¶ 2(d). Filing an unsealed copy would competitively disadvantage GEA by exposing its internal data collection and damage analysis processes to competitors. (*See, e.g.*, Cleary Decl. ¶ 3.)

**5. GEA-Haft_007335**: This is guidance from SCHOTT Gemtron ("SCHOTT"), one of GEA's suppliers, as part of a quote for services. This guidance is subject to an NDA and reflects product-specific, technical information and constitutes proprietary "information received in confidence from third parties that has been kept in confidence." Order ¶ 2(e). Filing an unsealed copy would force GEA to violate NDAs, putting its SCHOTT relationship at risk. (*See, e.g.*, Cleary Decl. ¶ 4.)

WheelerTriggO'Donnell LLP

January 26, 2022
Page 3

**6. GEA-Haft_007464–7466**: These are GEA emails regarding a design change and reflect internal action items and conclusions stemming from a supplier visit. They contain "competitively sensitive engineering, technical, or commercial business information" and undisclosed "product-development information." Order ¶¶ 2(c)-(d). Filing an unsealed copy would competitively disadvantage GEA by exposing its undisclosed product development information to the public, including competitors. (*See, e.g.*, Cleary Decl. ¶ 3.)

**7. GEA-Haft_007467–7470**: These are emails between GEA and SCHOTT analyzing a specific broken glass incident. They contain proprietary "information received in confidence from third parties that has been kept in confidence." Order ¶ 2(e). (*See, e.g.*, GEA-Haft_007467–7470 (the message "should not be reviewed, forwarded, distributed" other than to the "intended recipient").) Filing an unsealed copy would force GEA to violate its NDAs with SCHOTT and would put this relationship at risk. (*See, e.g.*, Cleary Decl. ¶ 4.) Further, the emails discuss technical theories related to glass breakage; filing an unsealed copy would competitively disadvantage GEA by exposing its technical processes and theories to the public, including competitors. (*See, e.g.*, *id.*)

**8. GEA-Haft_007480–7483**: These are emails between GEA employees evaluating glass breakage reflect GEA's efforts to continually improve its products and its internal communications and recordkeeping related to supplier performance. They constitute proprietary, "competitively sensitive engineering, technical, or commercial business information." Order ¶ 2(d). Filing an unsealed copy would competitively disadvantage GEA by exposing its internal supplier-management processes to the public, including competitors. (*See, e.g.*, Cleary Decl. ¶ 3.)

**9. GEA-Haft_007673**: These are GEA emails regarding glass breakage theories reflect efforts to analyze and reduce breakage. They contain proprietary, "competitively sensitive engineering, technical, or commercial business information." Order ¶ 2(d). Filing an unsealed copy would competitively disadvantage GEA by exposing its technical theories to the public, including competitors. (*See, e.g.*, Cleary Decl. ¶ 3.)

**10. GEA-Haft_007818–7819**: These are GEA emails sharing information to decrease shipping-related glass breakage. They discuss GEA's methods for increasing shipping durability and thus contain proprietary, "competitively sensitive engineering, technical, or commercial business information." Order ¶ 2(d). Filing an unsealed copy would competitively disadvantage GEA by exposing its methods of increasing shipping durability to the public, including competitors. (*See, e.g.*, Cleary Decl. ¶ 3.)

GEA respectfully requests that the Court authorize redactions of information Plaintiffs have marked confidential from their Second Amended Complaint, and that the sealed, unredacted version of the papers be made available via ECF only to the Court and all Parties' attorneys in this matter. Alternatively, GEA requests leave for a hearing and full briefing on this issue.

WheelerTriggO'Donnell LLP

January 26, 2022
Page 4

                                                Sincerely,

                                                *[signature]*

                                                Marissa S. Ronk

CC: All Counsel of Record, via ECF

Application granted in part and denied in part.  In *Mirlis v. Greer*, the Second Circuit summarized the three steps that the Court must follow to determine whether the presumption of public access attaches to a particular document and bars sealing.  *See* 952 F.3d 51, 59 (2d Cir. 2020).  First, the Court determines whether the document is a "judicial document," namely, "one that has been placed before the court by the parties and that is relevant to the performance of the judicial function and useful in the judicial process."  *Id*. (quotation omitted).  Second, if the materials are "judicial documents," the Court "proceeds to 'determine the weight of the presumption of access to that document.'"  *Id.* (quoting *United States v. Erie Cty.*, 763 F.3d 235, 239, 241 (2d Cir. 2014)).  "The weight to be accorded is 'governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'"  *Id.* (quoting *United States v. Amodeo*, 71 F.3d at 1044, 1049 (2d Cir. 1995)).  "Finally, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access."  *Id.*

Having evaluated these factors, the motion to seal is granted in part.  The documents may be filed with redactions.  The documents are judicial documents.  The weight of the presumption at this stage is low.  Here, there are factors that counsel against disclosure, including that the information concerns Defendant's confidential business practices, as outlined in the Defendant's letter.  The factors outlined in this letter outweigh the public's interest in disclosure of the sealed record at this time.  The Court emphasizes that the Court's determination is based on the record at this point, and its assessment of the weight of the presumption now.  If circumstances change, or if the sealed information factors into the Court's evaluation of the complaint, including, in response to motion practice, the Court will reevaluate the propriety of maintaining tis information under seal.

The Clerk of Court is instructed to terminate the motion at Dkt. No. 68.

SO ORDERED.

Dated:  January 27, 2022                                    _____
New York, New York                                                 GREGORY H. WOODS
                                                            United States District Judge