UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASHER HAFT ROBERT FISHER, and CHERYL JONES individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>HAIER US APPLIANCE SOLUTIONS, INC. d/b/a GE APPLIANCES,<br><br>               Defendant. | Civil Action No. 1:21-cv-00506-GHW<br><br><br>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND MOTION TO STRIKE CLASS ALLEGATIONS** |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................ 1

STATEMENT OF ALLEGED FACTS ............................................................................... 2

LEGAL STANDARD .......................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

I.      PLAINTIFFS' BREACH OF EXPRESS WARRANTY CLAIM FAILS. ....................... 7

        A.      Plaintiffs Still Fail to Plead a Breach of Express Warranty Because They
                Do Not Allege Their Ovens Broke during the Warranty's One-Year
                Period. ........................................................................................................ 7

        B.      Plaintiffs Have Not Adequately Alleged Unconscionability. ................................ 7

                1.      Unconscionability is a question of law. ..................................................... 7

                2.      Plaintiffs fail to adequately allege procedural unconscionability. .............. 8

                3.      Plaintiffs fail to adequately allege substantive unconscionability. ........... 11

        C.      Plaintiffs Allege a Defect Not Covered by the Limited Warranty ....................... 13

II.     PLAINTIFFS DO NOT HAVE STANDING TO SEEK INJUNCTIVE RELIEF .......... 16

III.    PLAINTIFFS' NEW YORK, NEW JERSEY, AND FLORIDA STATUTORY
        CLAIMS FAIL ........................................................................................................ 16

        A.      Mr. Haft's Attempt to Revive His New York Statutory Claim Is
                Procedurally Improper and Meritless ..................................................................... 16

        B.      Plaintiff Haft Lacks Standing under the New Jersey Consumer Fraud Act. ........ 20

        C.      Plaintiff Jones's Statutory Claim Fails. ................................................................. 22

                1.      Ms. Jones fails to plead her FDUTPA claim with specificity. ................. 22

                2.      Ms. Jones alleges no misconduct in Florida. ........................................... 23

IV.     THE COURT SHOULD DENY LEAVE TO AMEND. .................................................. 24

V.      THE COURT SHOULD STRIKE ALL BUT THE PENNSYLVANIA CLASS. ........... 25

CONCLUSION ............................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abraham v. Volkswagen of Am., Inc.*,
   795 F.2d 238 (2d Cir. 1986) ................................................................. 7

*Aiello v. Brown*,
   No. 21-0987-CV, 2021 WL 5505107
   (2d Cir. Nov. 24, 2021) ....................................................................... 20

*Alban v. BMW of N. Am.*,
   No. CIV. 09-5398 (DRD), 2011 WL 900114
   (D.N.J. Mar. 15, 2011) ....................................................................... 11

*Alexander v. Am. Airlines, Inc.*,
   No. 4:02-CV-0252-A, 2002 WL 731815
   (N.D. Tex. Apr. 22, 2002) ................................................................... 25

*Amato v. Subaru of America, Inc.*,
   No. CV 18-16118, 2019 WL 6607148
   (D.N.J. Dec. 5, 2019) ........................................................ 9, 10, 11, 13

*Argabright v. Rheem Mfg. Co.*,
   258 F. Supp. 3d 470 (D.N.J. 2017) ..................................................... 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................. 6, 11, 24

*Banco Safra S.A.-Cayman Islands Branch v. Samarco Mineracao S.A.*,
   849 F. App'x 289 (2d Cir. 2021) ......................................................... 25

*Beaver v. Inkmart, LLC*,
   No. 12-60028, 2012 WL 4005970
   (S.D. Fla. Sept. 12, 2012) ................................................................... 24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................. 6, 11, 19

*Bobadilla-German v. Bear Creek Orchards, Inc.*,
   No. CV 07-3058-PA, 2009 WL 1726342
   (D. Or. June 17, 2009) ........................................................................ 25

*Catalano v. BMW of N. Am., LLC*,
   167 F. Supp. 3d 540 (S.D.N.Y. 2016) ........................................... 14, 15

*Chevron Corp. v. Donziger*,
  No. 11 CIV. 0691 LAK, 2013 WL 624648
  (S.D.N.Y. Feb. 20, 2013) ......................................................................... 17

*Cohen v. Am. Airlines, Inc.*,
  13 F.4th 240 (2d Cir. 2021) ..................................................................... 17

*Cooper v. Samsung Elecs. Am., Inc.*,
  374 F. App'x 250 (3d Cir. 2010) .......................................................... 20, 21

*Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*,
  341 F. App'x 487 (11th Cir. 2009) ............................................................ 23

*D.H.G. Props., LLC v. Ginn Cos., LLC*,
  No. 3:09-CV-735-J-34JRK, 2010 WL 5584464
  (M.D. Fla. Sept. 28, 2010) ................................................................... 22, 23

*DJ Lincoln Enters., Inc. v. Google LLC*,
  No. 21-12894, 2022 WL 203365
  (11th Cir. Jan. 24, 2022) ..................................................................... 22, 23

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
  66 F.3d 604 (3d Cir. 1995) ......................................................................... 7

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*,
  No. 14-CV-712 (SHS), 2020 WL 4349840
  (S.D.N.Y. July 29, 2020) ............................................................................ 20

*Five for Ent. S.A. v. Rodriguez*,
  877 F. Supp. 2d 1321 (S.D. Fla. 2012) ...................................................... 23

*Garcia v. Chrysler Grp. LLC*,
  127 F. Supp. 3d 212 (S.D.N.Y. 2015) ............................................. 13, 14, 15

*Goshen v. Mut. Life Ins. Co. of New York*,
  98 N.Y.2d 314 (2002) ................................................................................ 19

*Harbison v. Louisiana-Pac. Corp.*,
  602 F. App'x 884 (3d Cir. 2015) ............................................................... 11

*Hummel v. Tamko Bldg. Prods., Inc.*,
  No. 6:15-CV-910-ORL-40GJK, 2015 WL 12843907
  (M.D. Fla. Nov. 6, 2015) .......................................................................... 22

*In re Caterpillar*,
  No. 1:14-CV-3722 (JBS-JS), 2015 WL 4591236
  (D.N.J. July 29, 2015) ................................................................................ 9

*K.C.P.L., Inc. v. Nash*,
 No. 98 CIV. 3773 (LMM), 1998 WL 823657
 (S.D.N.Y. Nov. 24, 1998) ........................................................................................ 19

*Licul v. Volkswagen Grp. of Am., Inc.*,
 No. 13-61686-CIV, 2013 WL 6328734
 (S.D. Fla. Dec. 5, 2013) .............................................................................. 7, 8, 11, 13

*Lockheed Martin Corp. v. Retail Holdings, N.V.*,
 639 F.3d 63 (2d Cir. 2011) ....................................................................................... 13

*Mack Trucks Inc. v. BorgWarner Turbo Sys., Inc.*,
 508 F. App'x 180 (3d Cir. 2012) .............................................................................. 13

*Mack v. LLR, Inc.*,
 No. 217CV07252JGBAFMX, 2018 WL 6038349
 (C.D. Cal. Jan. 31, 2018) ......................................................................................... 17

*Maxcess, Inc. v. Lucent Techs., Inc.*,
 433 F.3d 1337 (11th Cir. 2005) ................................................................................. 2

*Mill-Bern Assocs., Inc. v. IBM Corp.*,
 64 F. App'x 792 (2d Cir. 2003) .................................................................................. 8

*Miller v. Hyundai Motor Am.*,
 No. 15-CV-4722 (TPG), 2017 WL 4382339
 (S.D.N.Y. Sept. 29, 2017) ............................................................................. 14, 15, 16

*Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,
 898 F.3d 243 (2d Cir. 2018) ..................................................................................... 17

*Nelson v. Nissan N. Am., Inc.*,
 894 F. Supp. 2d 558 (D.N.J. 2012) ........................................................................... 10

*Nelson v. Nissan N. Am., Inc.*,
 No. 11-5712 (JEI/AMD), 2014 WL 7331922
 (D.N.J. Dec. 19, 2014) ........................................................................................ 13, 14

*Piller v. JPMorgan Chase Bank*,
 No. CV 20-2248, 2020 WL 8186165
 (D.N.J. Oct. 23, 2020) ......................................................................................... 20, 21

*Ponzio v. Mercedes-Benz USA, LLC*,
 447 F. Supp. 3d 194 (D.N.J. 2020) ........................................................................... 13

*Sabater v. Am. Journey (PET), LLC*,
 No. 21-60409-CIV, 2021 WL 5149846
 (S.D. Fla. Oct. 29, 2021) .......................................................................................... 16

*Salinas v. City of San Jose*,
    No. C 09-4410 RS, 2010 WL 5300920
    (N.D. Cal. Dec. 20, 2010) ................................................................................. 17

*Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*,
    832 F. Supp. 2d 194 (E.D.N.Y. 2010) ................................................................ 11

*Signeo Int'l Ltd. v. Wade*,
    No. 6:12-CV-1884-ORL-DAB, 2013 WL 12153590
    (M.D. Fla. Apr. 1, 2013) .................................................................................... 24

*Smith v. Ford Motor Co.*,
    462 F. App'x 660 (9th Cir. 2011) ...................................................................... 10

*Tyman v. Pfizer, Inc.*,
    No. 16-CV-6941-LTS-BCM, 2018 WL 481890
    (S.D.N.Y. Jan. 18, 2018) ................................................................................... 25

*Vazquez v. Gen. Motors, LLC*,
    No. 17-22209-CIV, 2018 WL 447644
    (S.D. Fla. Jan. 16, 2018) ................................................................................... 13

*W.W. Sports Importadora Exportadora e Comercial Ltda v. BPI Sports, LLC*,
    No. 0:16-CV-60147-WPD, 2016 WL 9375202
    (S.D. Fla. Aug. 11, 2016) .................................................................................. 24

*Werwinski v. Ford Motor Co.*,
    286 F.3d 661 (3d Cir. 2002) .............................................................................. 10

*Wilding v. DNC Servs. Corp.*,
    941 F.3d 1116 (11th Cir. 2019) ......................................................................... 22

**RULES**

Fed. R. Civ. P. 8 ...................................................................................................... 6

Fed. R. Civ. P. 9 ............................................................................................... 22, 23

Fed. R. Civ. P. 12 .................................................................................................. 20

Fed. R. Civ. P. 15 ............................................................................................ 16, 24

**OTHER AUTHORITIES**

Restatement (Third) of Torts § 2 ............................................................................ 13

U.C.C. § 2-302 ........................................................................................................ 4

## INTRODUCTION

Nothing has changed since this Court dismissed Plaintiffs' original claims for breach of express warranty, injunctive relief, and violations of the New York General Business Law ("GBL"). *See* ECF No. 61. This Court held that Plaintiffs Haft and Fisher did not state an express warranty claim because their claims arose *after* the warranty expired, and Plaintiffs failed to adequately plead that the warranty's one-year durational limit was unconscionable. *Id.* at 10–19. This is still the case today. Unable to allege the facts this Court indicated were necessary to plead an express warranty claim, Plaintiffs' Consolidated Amended Class Action Complaint (ECF No. 94) (the "CAC") doubles down on Plaintiffs' "highly conclusory" unconscionability allegations and fails to offer any other basis to invalidate the warranty's one-year time limit. On this basis alone, the express warranty claims should be dismissed.

The Court should also dismiss these claims because the express warranty only obligates Defendant Haier US Appliance Solutions, Inc. d/b/a GE Appliances ("GEA") to remedy *manufacturing* defects, *i.e.*, defects that arise from mistakes in the manufacturing process. But Plaintiffs allege a *design* defect—one stemming from GEA's intentional choice about the glass it would use in its ovens. The express warranty claim independently fails on this basis as well.

Plaintiffs' reasserted claims for injunctive relief likewise fail for the same reasons they did before. In fact, Plaintiffs' latest claims for injunctive relief are identical to the ones this Court already dismissed. Accordingly, Plaintiffs still "lack standing to pursue injunctive relief," and their claims for such relief should be dismissed. ECF No. 61 at 36.

The deficiencies in Plaintiffs' statutory claims also persist. Plaintiff Haft, for example, attempts to revive his GBL claim by simply alleging that he ordered his oven from a New Jersey seller over the phone while at his New York home. His reassertion of this claim, however, is procedurally improper because the Court never granted him leave to re-plead it, and it fails on the

merits in any case. A single phone call does not create a significant enough connection to New York to trigger the GBL, and even if it did, Mr. Haft has not plausibly alleged he made such a phone call. His alternative claim under the New Jersey Consumer Fraud Act ("NJCFA"), meanwhile, fails because he neither lives in New Jersey nor suffered injury there, which is what the applicable test for statutory standing under the NJCFA requires. Plaintiff Jones's claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") fails on similar grounds.

Given these deficiencies, the only remaining claim is Plaintiff Robert Fisher's claim for an alleged violation of Pennsylvania's consumer protection law.[1] But he brings that claim only on behalf of himself and Pennsylvania residents who own or owned a GEA oven with a door made with soda lime glass. Plaintiffs have thus failed to state *any* claims on behalf of the Nationwide, New York, New Jersey, and Florida Classes. As such, those classes should all be stricken.

## STATEMENT OF ALLEGED FACTS

The CAC closely resembles Plaintiffs' First Amended Class Action Complaint (ECF No. 31) (the "FAC"). Plaintiffs Asher Haft and Robert Fisher allege they bought GEA ovens from third-party retailers in 2018, and Plaintiff Cheryl Jones alleges she did the same in 2019. CAC ¶¶ 50, 61, 71. All three allege that GEA breached the ovens' "Limited Warranty," which expired one year from the date of original purchase. *See id.* ¶¶ 233–35, 268–70, 303–05, 338–40; Ex. 1 at 4 (Haft's Limited Warranty); Ex. 2 at 6 (Fisher's); Ex. 3 at 1 (Jones's).[2]

> For the period of one year from the date of the original purchase. GE will provide any part of the range which fails due to a defect in materials or workmanship. During this limited one-year warranty, GE will also provide, free of charge, all labor and in-home service to replace the defective part.

---

[1] GEA continues to maintain that Mr. Fisher fails to plead an actionable claim under the Pennsylvania Unfair Trade Practice and Consumer Protection Law, and does not waive its rights with respect to those claims. It recognizes the Court's prior ruling on this claim, however, and therefore does not re-address it in this motion.

[2] Because the Complaint expressly incorporates the Limited Warranty, the Court may consider its contents. *See* ECF No. 61 at 2 n.2; *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

Further, Plaintiffs still do not (and cannot) deny that GEA customers may "[p]urchase a GE extended warranty on-line anytime," an option the Limited Warranty makes clear:

> **Extended Warranties:** Purchase a GE extended warranty and learn about special discounts that are available while your warranty is still in effect. You can purchase it on-line anytime

Ex. 1 at 4; Ex. 2 at 6; Ex. 3 at 18.

The CAC also does not change the basis for Plaintiffs' express warranty and contract claims. Plaintiffs still concede that their ovens worked for more than two years before the oven door glass cracked. CAC ¶¶ 50–54 (Haft), ¶¶ 61–65 (Fisher), ¶¶ 71–75 (Jones). They continue to claim that the glass cracked because of "a uniform defect whereby [soda lime glass] cannot withstand . . . high temperatures." *Id*. ¶ 29. And they still allege that GEA breached the Limited Warranty by failing "to adequately repair or replace the Ovens" and "by selling Ovens that were, in actuality, not free of defect" in the first place. *Id*. ¶¶ 233, 268, 303, 338.

As before, Plaintiffs also try to avoid the warranty's one-year time limit by claiming it is unconscionable, repeating most of their initial unconscionability allegations *verbatim*:

| *Allegation* | *FAC¶* | *CAC¶* |
|---|---|---|
| "GE knew or should have known of the Defect prior to and at the time of sale of the Ovens to consumers." | 92(a) | 109(a)[3] |
| "Plaintiffs and Class Members had no ability to discover[] the Defect at the time of sale." | 92(b) | 109(h) |
| "The one-year durational limit on the warranty is grossly inadequate to protect Plaintiffs and Class Members from the Defect." | 92(c) | 109(i) |
| "GE sold the Ovens with knowledge of the Defect and of the fact that it may not manifest until after expiration of the one-year warranty." | 92(d) | 109(j) |
| "GE sold the Ovens with knowledge of the Defect and of the fact that the Ovens would fail well before [the expiration of] their useful lives." | 92(e) | 109(k)[4] |
| "GE sold the Ovens knowing that they were not capable of being repaired or replaced with non-defective glass within a one-year warranty period, or thereafter." | 92(f) | 109(1) |

---

[3] The CAC words this allegation slightly differently than the FAC and elaborates on the factual basis for this allegation, as explained below.

[4] Bracketed words added in CAC.

| *Allegation* | *FAC ¶* | *CAC ¶* |
|---|---|---|
| "Plaintiffs and Class Members would have negotiated better terms in the purchase of their Ovens and warranties had they been aware of the Defect." | 92(g) | 109(m) |
| "The terms of the warranty unreasonably favor GE over Plaintiffs and Class Members." | 92(h) | 109(n) |
| "Plaintiffs and Class Members had no meaningful choice about the one-year time limit in the warranty." | 92(i) | 109(d)[5] |
| "There was a substantial disparity between the parties' bargaining power such that Plaintiffs were unable to derive a substantial benefit from the warranties. A disparity existed because GE was aware that the Ovens were inherently defective, Plaintiffs and Class Members had no notice or ability to detect the Defect, GE knew Plaintiffs and Class Members had no notice or ability to detect the Defect, and GE knew that Plaintiffs and Class Members would bear the cost of correcting the Defect. This disparity was increased by GE's knowledge that failure to disclose the Defect would substantially limit the Oven's use and could cause it to fail altogether." | 92(j) | 109(f) |
| "GE failed and refused to extend the time limitation of the warranty to cover the Defect, which was known to GE and unknown to consumers at the point of sale." | 92(k) | 109(g) |
| "Any efforts to limit the express warranties in a manner that would exclude coverage of the Ovens is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Ovens is null and void." | 159 | 242 277 312 347 |
| "The durational limitation in the warranty is unconscionable and unenforceable pursuant to Uniform Commercial Code section 2-302, which state[s] [full quote to § 2-302 omitted]." | 135 160 | 243 278 313 348 |
| "The time limits contained in the warranty are unconscionable and inadequate to protect Plaintiffs and Class Members. Plaintiffs and Class Members had no meaningful choice in determining the time limitation, the terms of which unreasonably favored GE, who had superior and exclusive knowledge of the Defect, which existed at the time of sale of the Ovens. A gross disparity in bargaining power existed between GE, and Plaintiffs and Class Members, and GE knew or should have known that the Ovens were defective at the time of sale and would fail before the expiration of their useful lives." | 136 161 | 244 279 314 349 |
| "The time limits contained in the warranty are also unconscionable given that GE is unable to repair or replace the defective Ovens during the one-year Warranty period (or after), and the Warranty is a sham. GE used its superior knowledge of the Defect to offer a warranty, which it knew or should have known would not cover the material Defect known to GE to exist in the Ovens at the time of purchase by Plaintiffs and Class Members. | 162 | 245 280 315 350 |

---

[5] The CAC words this allegation slightly differently than the FAC, but the substance remains the same: "Plaintiffs and Class Members had no meaningful choice in the terms of the Warranty, including the durational time limitation or disclaimer contained therein." CAC ¶ 96(d).

| *Allegation* | *FAC* ¶ | *CAC* ¶ |
|---|---|---|
| GE breached its express warranties to Plaintiffs and Class Members by providing them with Ovens that contain a Defect known to GE, and unknown to Plaintiffs and Class Members, at the time of purchase. GE further breached its express warranties to Plaintiffs and Class Members as it has failed or refused to remedy the Defect or is unable to remedy the Defect." | | |

The *only* original unconscionability allegation the CAC substantively changes is Plaintiffs' assertion that "GE knew or should have known of the Defect at the time of sale." FAC ¶ 92(a). The CAC now cites from some of "the hundreds or more consumer complaints" allegedly made to GEA regarding glass breakage in ovens, provides additional examples of these alleged complaints, and cites various "[d]ocuments produced by GE during discovery" that allegedly "confirm" GEA knows glass can break. CAC ¶¶ 80, 109(a). The CAC does not contain additional facts regarding when the oven glass initially broke in these instances, what percentage of the millions of ovens that GEA sells broke outside of warranty, or how long after the warranty the glass broke.

The CAC also adds three other unconscionability allegations to those in the FAC:

1.    "GE was in a superior position to know of, remedy and disclose the Defect in its Ovens to Plaintiffs, who could not have known of the Defect at the time of purchase;"

2.    "Plaintiffs and Class Members had no ability to negotiate the terms of the Warranty, including the durational time limitation or disclaimers. . . .;"

3.    "Plaintiffs and Class Members had no meaningful choice in choosing another brand of oven, as any other reputable brand would likewise have warranties containing the same or similar terms and limitations."

*Id.* ¶¶ 109(b), (c), (e); *see also id.* ¶¶ 52, 63, 73 (similar allegations regarding alleged lack of "meaningful choice in the terms of the Warranty"). Presumably, these conclusory allegations are meant to strengthen Plaintiffs' assertion that they lacked a "meaningful choice" about the warranty.

Finally, in an apparent attempt to revive his New York GBL claim, Plaintiff Haft alleges, for the first time, that he "purchased the Oven over the phone while at his home in Brooklyn, New York" from a New Jersey seller. *Id.* ¶ 50. There are only two conceivable explanations for this late

addition, which comes on Plaintiffs' *fourth* amended pleading and a year and a half into the case. Either (1) Plaintiffs' counsel neglected to perform even the most minimal level of diligence in researching the factual basis for Mr. Haft's GBL claim the first three times around; or (2) the allegation is untrue, and Plaintiffs have added it at this late hour because the briefing on GEA's motion to dismiss their Second Amended Complaint ("SAC") revealed serious issues with Mr. Haft's alternative NJCFA claim.

Beyond these additions, there are no distinctions between the two complaints material to the claims challenged here.

## **LEGAL STANDARD**

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that contains only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do" under this standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Likewise, "naked assertion[s] devoid of further factual enhancement" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though the Court must assume that well-pled allegations are true, conclusory allegations are "not entitled to th[at] assumption." *Id.* at 679. A court looks to whether the complaint includes "enough factual matter (taken as true) to suggest" that the plaintiff is entitled to relief. *Twombly*, 550 U.S. at 556. If the complaint does not nudge the plaintiff's claims "across the line from conceivable to plausible," it "must be dismissed." *Id.* at 570.

<u>**ARGUMENT**</u>

**I.     PLAINTIFFS' BREACH OF EXPRESS WARRANTY CLAIM FAILS.**

> **A.     Plaintiffs Still Fail to Plead a Breach of Express Warranty Because They Do Not Allege Their Ovens Broke during the Warranty's One-Year Period.**

The Court previously held that Plaintiffs failed to adequately plead an express warranty claim because the Limited Warranty expires after one year, and "Plaintiffs have not pleaded that the soda glass oven doors failed within [that] year-long period." ECF No. 61 at 10–11; *see also Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) ("[A]n express warranty does not cover repairs made after the applicable time has elapsed.") (quoting *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986)) (cleaned up); *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686-CIV, 2013 WL 6328734, at *2 (S.D. Fla. Dec. 5, 2013) ("As a general rule, a plaintiff may not bring a claim for breach of an express warranty where a defect has not manifested during the warranty period.") (collecting Florida authority). That fact remains just as true today: Plaintiffs still "have not pleaded that the soda glass oven doors failed within the year-long period in which Defendant was obligated." ECF No. 61 at 10–11, 21–22; *compare also* CAC ¶¶ 50 *with* 54 (Haft); *id.* ¶¶ 61 *with* 65 (Fisher); *id.* ¶¶ 71 *with* 75 (Jones). For this reason alone, Plaintiffs' express warranty claim fails.

> **B.     Plaintiffs Have Not Adequately Alleged Unconscionability.**

>> 1.     <u>Unconscionability is a question of law.</u>

Because Plaintiffs cannot plead their ovens broke during the Limited Warranty's one-year time period, they once again allege that the Limited Warranty's temporal limitation is unconscionable—an argument Plaintiffs previously made that this Court has already rejected. ECF No. 61 at 12–19. Their allegations once again fail to pass muster.

Unconscionability is a question of law. *Mill-Bern Assocs., Inc. v. IBM Corp.*, 64 F. App'x 792, 794 (2d Cir. 2003). Under the UCC, "[t]he basic test for unconscionability is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." ECF No. 61 at 12. Plaintiffs "must plead both procedural and substantive unconscionability" for the Limited Warranty to be unconscionable. *Id.* "Procedural unconscionability assesses the contract formation process, while substantive unconscionability concerns the content of the contract." *Id.*; *see also Licul*, 2013 WL 6328734, at *3 (same standards under Florida law). The Court held that the FAC failed to plead both types of unconscionability. ECF No. 61 at 18–19. The CAC commits the same offenses.

2.      Plaintiffs fail to adequately allege procedural unconscionability.

To establish procedural unconscionability, Plaintiffs must allege facts showing "a lack of meaningful choice." *Id.* at 12–13; *Licul*, 2013 WL 6328734, at *3 (same under Florida law). When ruling on GEA's first motion to dismiss, the Court found "highly conclusory" Plaintiffs' allegations that they "had no meaningful choice about the one-year time limit in the warranty," and that "GE failed and refused to extend the time limitation of the warranty." ECF No. 61 at 12–13, 18. The Court found that Plaintiffs failed to plead procedural unconscionability under New York, New Jersey, and Pennsylvania law. *Id.* at 12–13.

The CAC does not correct this deficiency. It still does not allege that Plaintiffs "inquired about the warranty prior to purchasing the oven, for instance," an allegation this Court suggested was necessary to support their other procedural unconscionability allegations. *Id.* Instead, the CAC mainly just repeats the "highly conclusory" allegations from the FAC. *See supra* at 3–5 (comparing FAC ¶¶ 92(b), (g), (i), (j), (k), 161, and 162 *with* CAC ¶¶ 109(h), (m), (d), (f), (g), 244, and 245,

respectively). The Court held that all of these allegations were "highly conclusory" before, and the CAC adds nothing to make them any less conclusory now.

Likewise, the only nominally new allegations in the CAC—paragraphs 109(b), (c), and (e)—simply replicate the FAC and fail to plead procedural unconscionability. The allegation from CAC paragraph 109(b) that "GE was in a superior position" to know of the defect, for example, was already reflected in the FAC. *See* FAC ¶ 92(j) ("GE was aware that the Ovens were inherently defective, [and] Plaintiffs and Class Members had no notice or ability to detect the Defect."); *id.* ¶ 161 (GEA "had superior and exclusive knowledge of the Defect."). Likewise, allegations that Plaintiffs were unable "to negotiate the terms of the Warranty" and "lacked meaningful choice," CAC ¶¶ 109(c), (e), are another way of saying that "Plaintiffs and Class Members had no meaningful choice about the one-year time limit in the warranty." FAC ¶ 92(i). Substantively, therefore, these allegations are insufficient to plead procedural unconscionability.

And Plaintiffs' new allegations are just as conclusory as the old. Paragraph 109(b)'s allegation concerning GE's "superior position," for example, resembles the allegation deemed conclusory in *In re Caterpillar*, which asserted that a warranty was unconscionable "in light of [the defendant's] superior knowledge of the [product's] design defect and the parties' unequal bargaining power." No. 1:14-CV-3722 (JBS-JS), 2015 WL 4591236, at *19, 22 (D.N.J. July 29, 2015). Similarly, paragraph 109(e)— alleging that Plaintiffs could not choose another oven brand because they all "have warranties containing the same or similar terms"—mirrors the conclusory allegation from *Amato v. Subaru of Am., Inc.*, which cited a "lack of meaningful alternatives" and the "absence of effective warranty competition" as a basis for procedural unconscionability. No. CV 18-16118, 2019 WL 6607148, at *9 (D.N.J. Dec. 5, 2019). And paragraph 109(c)'s allegation that Plaintiffs "had no ability to negotiate the terms of the Warranty" is no different

from the plaintiffs' conclusory allegation that their warranty was "presented to customers on a take-it-or-leave-it basis" in *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 565 (D.N.J. 2012).

As a matter of law, moreover, Plaintiffs' alleged inability "to negotiate the specific details of their" warranties does not deprive them of "bargaining power" so long as they have the "freedom to choose" a less expensive product with a limited warranty, a more expensive product with a longer-term warranty, or even just "an extended warranty." *Amato,* 2019 WL 6607148, at *10 (quoting *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 673 (3d Cir. 2002)). Plaintiffs had that option here. The Limited Warranty—which this Court held was conspicuous, *see* ECF No. 61 at 9—made it clear that Plaintiffs could "purchas[e] a different warranty with an extended durational limit" before the original warranty expired. *Smith v. Ford Motor Co.*, 462 F. App'x 660, 663-64 (9th Cir. 2011). Specifically, the Limited Warranty's "Extended Warranties" section offered customers like Plaintiffs the ability to buy the "GE extended warranty . . . anytime" they wanted, either online or over the phone. Ex. 1 at 4; Ex. 2 at 6; Ex. 3 at 18. This provides a "meaningful substitute" to the one-year warranty, and Plaintiffs' failure to take advantage of it does not render the default warranty period unconscionable. *Smith*, 462 F. App'x at 663 (emphasis omitted).

Finally, Plaintiffs' allegations regarding customer complaints similarly underscore the conclusory nature of their assertion that they "could not have known of the Defect at the time of purchase" and therefore lacked bargaining power. CAC ¶ 109(b). In direct contradiction to this assertion, Plaintiffs provide a laundry list of publicly available complaints, many made prior to Plaintiffs' purchases, on various websites, including the CPSC's. *See id.* ¶¶ 81–85 (collecting examples). Nothing prevented Plaintiffs from looking up these complaints before they purchased

their ovens. Had they exercised even this minimal level of diligence, they certainly *could* have learned of the complaints before buying the ovens, at least enough to inquire further.

In light of the extended warranty option and Plaintiffs' ability to learn, pre-purchase, that glass breaks, to plausibly allege procedural unconscionability, Plaintiffs needed to plead specific "supporting facts as to their choices and bargaining power." *Amato*, 2019 WL 6607148, at *10. They failed to do so, offering only "bare conclusory statements that fail to state a claim under the *Iqbal*/*Twombly* standard." *Id.* Accordingly, "Plaintiffs have not stated a claim that the Limited Warranty is [procedurally] unconscionable." *Id.*

3.   Plaintiffs fail to adequately allege substantive unconscionability.

Plaintiffs also fail to meet the even more demanding standard for pleading substantive unconscionability, which requires specific facts "so one-sided as to shock the court's conscience." *Alban v. BMW of N. Am.*, No. CIV. 09-5398 (DRD), 2011 WL 900114, at *8 (D.N.J. Mar. 15, 2011) (New Jersey law); *see also Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 202 (E.D.N.Y. 2010); (New York law); *Harbison v. Louisiana-Pac. Corp.*, 602 F. App'x 884, 887 (3d Cir. 2015) (Pennsylvania); *Licul*, 2013 WL 6328734, at *3 (Florida). This standard is even higher where, as here, the level of procedural unconscionability is low or nonexistent. *See Shema*, 832 F. Supp. 2d at 202 ("It is only in exceptional cases where a provision of the contract is so outrageous that a contract might be rendered unenforceable on the ground of substantive unconscionability alone."); *see also Harbison*, 602 F. App'x at 886 (describing "sliding-scale approach" to unconscionability); *Licul*, 2013 WL 6328734, at *3 (same).

Plaintiffs' previous allegations—such as that GEA "knew of a latent defect"—were conclusory and did not clear this high bar. ECF No. 61 at 17. Even the FAC's "allegation that the defect 'typically' manifests after the expiration of the warranty" was "too vague" to plead "substantive unconscionability." *Id.* at 19. The Court signaled that Plaintiffs' only hope for saving

their substantive unconscionability claim would be to plead facts clarifying whether "the defect in the soda glass doors manifests outside of the warranty period 51% of the time, or 99%," whether "1% of the ovens typically fail after that period, or 99%," and whether "those failures occur one day after the warranty period, or ten years." *Id.*

Plaintiffs have not answered these key questions. While they now allege additional facts suggesting that GEA knew of the alleged defect before Plaintiffs purchased their ovens,[6] these allegations were, in essence, already included in the FAC. *See, e.g.*, FAC ¶ 67 ("GE's knowledge . . . may be established through consumer complaints, including several years' worth of public Internet posts and warranty claims regarding the glass doors of the Ovens shattering during normal use."); *id.* ¶¶ 68, 71 (citing examples of complaints). More importantly, Plaintiffs do not plead that "Defendants knew that the product would fail after the warranty expired, but before the product life, in 80% of cases," or even "50% of cases." ECF No. 61 at 17. Nor do Plaintiffs clarify the "percentage of the products [that] fail [or] at what point in time." *Id.* Instead, Plaintiffs' new allegations merely stand for the proposition that GEA knows glass can break. The CAC does not answer the key questions the Court identified on the substantive unconscionability issue and thus "fails to meaningfully tip the scales in Plaintiffs' favor—especially when viewed in conjunction with the Plaintiff's [sic] conclusory allegations of procedural [unconscionability]." *Id.* at 19; *see also Argabright v. Rheem Mfg. Co.*, 258 F. Supp. 3d 470, 482 (D.N.J. 2017) ("[A] finding of unconscionability cannot be premised solely upon allegations that Defendant knew that a defect in the product might arise, and created a limited warranty designed to avoid fixing the defect.");

---

[6] *See* CAC ¶¶ 81–86 (consumer complaints), ¶ 95 (internal GEA documents), ¶ 109(a) ("GE knew or should have known of the Defect . . . from the hundreds or more consumer complaints . . . and warranty claims made . . . to GE.").

*Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 256 (D.N.J. 2020) (similar); *Amato*, 2019 WL 6607148, at *9–10 (similar); *Licul*, 2013 WL 6328734, at *3 (similar).

With no other basis to nullify the Limited Warranty's one-year limitation,[7] Plaintiffs cannot state a claim for breach of express warranty. The Court should dismiss the express warranty claim.

### C.       Plaintiffs Allege a Defect Not Covered by the Limited Warranty.

Plaintiffs' express warranty claim fails for an additional, independent reason: the Limited Warranty does not cover the defect Plaintiffs allege. The Limited Warranty only covers "defect[s] *in materials or workmanship*." Ex. 1 at 4 (emphasis added); *accord* Ex. 2 at 6; Ex. 3 at 18. In all the relevant states, the phrase "defects in materials or workmanship" only connotes *manufacturing* defects. *See Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 226 (S.D.N.Y. 2015) (warranty that covered defects "in material, workmanship or factory preparation" limited to "manufacturing defects" under New York law); *Mack Trucks Inc. v. BorgWarner Turbo Sys., Inc.*, 508 F. App'x 180, 185 (3d Cir. 2012) (Pennsylvania law); *Nelson v. Nissan N. Am., Inc.*, No. 11-5712 (JEI/AMD), 2014 WL 7331922, at *2 (D.N.J. Dec. 19, 2014) (New Jersey); *Vazquez v. Gen. Motors, LLC*, No. 17-22209-CIV, 2018 WL 447644, at *3 & n.4 (S.D. Fla. Jan. 16, 2018) (Florida). It follows that the Limited Warranty only obligates GEA to remedy *manufacturing* defects.[8]

The CAC, however, alleges a *design* defect, not a manufacturing defect. A product exhibits a manufacturing defect when it fails "to meet the manufacturer's design specifications" due to some error in the manufacturing process. Restatement (Third) of Torts § 2 cmt. d. A design defect,

---

[7] Plaintiffs also re-plead their unsuccessful theory that the Limited Warranty failed of its essential purpose almost word-for-word. *Compare* FAC ¶¶ 93, 164 *with* CAC ¶¶ 113, 247, 282, 317, 352. With no new support, this duplicative theory fails to save Plaintiffs' warranty claim for the same reasons as before. *See* ECF No. 61 at 20–21.

[8] Plaintiffs deny that the "warranty is limited to defects in materials and workmanship," alleging that it "is ambiguous and no such limitation applies." CAC ¶ 31. This conclusory allegation does not overcome the plain terms of the warranty, however, which is explicitly limited to "defects in materials or workmanship." Ex. 1 at 4; Ex. 2 at 6; Ex. 3 at 18. And because this language "has a definite and precise meaning" under the law, as outlined above, the "contract is unambiguous." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011).

by contrast, arises when the product "meets the manufacturer's design specifications but . . . the specifications themselves create unreasonable risks." *Id.* In other words, while a "manufacturing defect is a mistake—an unintended deviation from normal or routine production," a design defect involves products that are "unreasonably dangerous as designed," even when "made in the precise manner intended by the manufacturer." *Miller v. Hyundai Motor Am.*, No. 15-CV-4722 (TPG), 2017 WL 4382339, at *4 (S.D.N.Y. Sept. 29, 2017).

Here, the CAC does not allege that the glass in Plaintiffs' ovens "deviat[ed] from normal or routine production" in a way "that renders an ordinarily safe product dangerous." *Id.* Instead, Plaintiffs "are unequivocal that [GEA] knew the pertinent materials were inadequate well in advance of selecting the materials for the [oven doors]," *id.* at *5, alleging that GEA "*chose* to use soda lime glass as a major component in the Ovens *knowing* that [it was defective]." CAC ¶ 49 (emphasis added). This "deliberate selection of [allegedly] defective materials" shows that GEA "acted with purpose" and "is at odds with" a manufacturing defect theory. *Miller*, 2017 WL 4382339, at *5. But it is perfectly consistent with a design defect theory.

The CAC's other assertions confirm that Plaintiffs only allege a design defect. Indeed, allegations that *all* of a defendant's products share a common defect "strongly suggest" a design defect theory, and the CAC is replete with such allegations. *Id.*; *see also Garcia*, 127 F. Supp. 3d at 226 (shared defects signaled design defect); *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 554 (S.D.N.Y. 2016) (same); *Nelson*, 2014 WL 7331922, at *3 (same). The CAC's first paragraph, for example, indicates that all "GE's ranges and wall ovens featuring glass-front doors made with soda lime glass . . . contain a defect causing the glass within the glass-front door to unexpectedly break, crack or shatter." CAC ¶ 1. And Plaintiffs' design defect theory is most apparent in their description of the defect in question:

> Each of the Ovens contains common design and/or manufacturing Defects that can
> cause and have caused the oven-door glass to break, crack or shatter. More
> specifically, the soda lime glass used in the Ovens suffers from a uniform defect
> whereby it cannot withstand the high temperatures that are common when the
> Ovens are used for their ordinary purpose, such as cooking or using the self-
> cleaning mode, resulting in the breaking, cracking or shattering of the glass-front
> door under normal and foreseeable use by consumers.

*Id.* ¶ 29 (emphasis added). This defect, the CAC continues, is inherent in *all* soda lime glass:

> When heated, the soda lime glass expands substantially more than in more suitable
> types of glass (e.g., borosilicate glass, which has a coefficient of thermal expansion
> of 32 10-7 / °C). This makes the glass doors in the Ovens significantly more prone
> to an abrupt and unexpected failure — breaking, cracking or shattering. This is
> because soda lime glass has a high coefficient of thermal expansion with very poor
> thermal shock resistance.

*Id.* ¶ 39; *see also id.* ¶¶ 38–49 (alleged problems with soda lime glass as a material choice). These allegations of a shared defect in the material used are typical of design defect claims and fundamentally inconsistent with manufacturing defect claims. *See Miller*, 2017 WL 4382339, at *5; *Garcia*, 127 F. Supp. 3d at 226; *Catalano*, 167 F. Supp. 3d at 554.

The CAC's only allegations of a manufacturing defect consist of the occasional and purely nominal reference to an alleged "design and/or manufacturing defect." CAC ¶¶ 7, 29. Such "offhand references," unsupported by factual allegations concerning errors in the manufacturing process, are insufficient to plead a manufacturing defect. *Garcia*, 127 F. Supp. 3d at 226.

The closest the CAC comes to a manufacturing defect is paragraph 46, which alleges:

> In addition to being an improper material for use in the Ovens, soda lime glass is
> also improper and *suffers from a further manufacturing defect* because, during
> manufacture, it must be tempered, or heat-strengthened, to increase its thermal
> shock resistance. Tempering, however, is not a solution to the problems associated
> with soda lime glass in applications, such as how it is used in the Ovens. Rather,
> tempering during the manufacturing process exacerbates the problems associated
> with soda lime glass, particularly if the glass-front doors of the Ovens made with
> soda lime glass are unevenly and/or poorly heated (i.e., tempered), or not heated to
> high enough temperatures to enhance the safety of the glass, which is the case with
> the Ovens at issue in this litigation.

CAC ¶ 46 (emphasis added). But even this paragraph does not support a theory that the glass "deviat[ed] from normal or routine production" in a way "that renders an ordinarily safe product dangerous," as required for a manufacturing defect theory. *Miller*, 2017 WL 4382339, at *4. Instead, it alleges that the tempering applied to *all* soda lime glass worsens the alleged problems with it, and even perfect manufacturing cannot fix them. This is a design defect theory.

## II.   PLAINTIFFS DO NOT HAVE STANDING TO SEEK INJUNCTIVE RELIEF.

Similarly, the Court should again dismiss Plaintiffs' request for injunctive relief. *See* CAC ¶¶ 130, 132, 134; *id.* at 98 ¶ E. Plaintiffs' allegations regarding injunctive relief have not changed between the FAC and CAC. *Compare, e.g.*, FAC ¶¶ 109–11, 113 *with* CAC ¶¶ 130–32, 134. They do not contest this Court's holding that Plaintiffs are "past purchasers of [an allegedly defective] product" who "are not likely to encounter future harm of the kind that makes injunctive relief appropriate . . . given their allegedly negative experiences with [GEA's] ovens." ECF No. 61 at 35–36; *see also, e.g.*, *Sabater v. Am. Journey (PET), LLC*, No. 21-60409-CIV, 2021 WL 5149846, at *4 (S.D. Fla. Oct. 29, 2021) (dismissing claim for injunctive relief under Florida law where "Plaintiff [could] not plausibly allege that he will purchase the products in the future"). Thus, Plaintiffs' claim for injunctive relief again fails for lack of standing. *See id.*

## III.  PLAINTIFFS' NEW YORK, NEW JERSEY, AND FLORIDA STATUTORY CLAIMS FAIL.

Apart from their express warranty and injunctive relief claims, the only claim remaining to Plaintiffs Haft and Jones are their statutory claims. SAC ¶¶ 159–76. These claims also fail.

### A.   Mr. Haft's Attempt to Revive His New York Statutory Claim Is Procedurally Improper and Meritless.

Mr. Haft reasserts his claim under the New York GBL. CAC ¶¶ 159–75, this time alleging he bought his oven from a New Jersey retailer "over the phone while at his home in Brooklyn," *id.* ¶ 50. This allegation does not save Mr. Haft's GBL claim, which fails for three reasons.

16

First, procedurally, this Court never granted Mr. Haft leave to reassert his GBL claim in the CAC. *See* Fed. R. Civ. P. 15 (a)(2) ("In all other cases [besides amending as a matter of course], a party may amend its pleading only with the opposing party's written consent or the court's leave.") Although the Court initially granted him leave to re-plead that claim within 14 days of its initial dismissal, ECF No. 61 at 36, Mr. Haft did not take the Court up on this offer and dropped this claim from the SAC. *See generally* ECF No. 70. His late reassertion of it now eighteen months into the case near the close of discovery is therefore improper and prejudicial, and the claim itself is a nullity. *See Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK, 2013 WL 624648, at *2 n.5 (S.D.N.Y. Feb. 20, 2013) ("[A]n amendment that has been filed . . . without leave of court or consent of the defendants is without legal effect.").

Mr. Haft will likely argue that this Court's consolidation order permits substantive amendments to his pleading. Not so. That order merely "directed [Plaintiffs] to file a consolidated complaint," ECF No. 88 at 2, meaning one that "combin[es] the *then-existing claims* and parties in a single pleading." *Salinas v. City of San Jose*, No. C 09-4410 RS, 2010 WL 5300920, at *1 (N.D. Cal. Dec. 20, 2010) (emphasis added). It does not authorize Plaintiffs to add new claims or reassert ones they previously abandoned. *See Mack v. LLR, Inc.*, No. 217CV07252JGBAFMX, 2018 WL 6038349, at *3 (C.D. Cal. Jan. 31, 2018) ("Plaintiffs cannot assert new or different claims in [a] consolidated complaint.") (synthesizing cases).[9] Yet that is what they have done.

---

[9] If Mr. Haft wishes to reassert his GBL claim, he "must seek leave to amend." *Mack*, 2018 WL 6038349, at *3. That way, the parties can fully brief the Court on the factors that determine whether leave is appropriate. *See Cohen v. Am. Airlines, Inc.*, 13 F.4th 240, 247 (2d Cir. 2021) (listing factors). This procedure is key here because there are strong signals that leave should be denied. *See, e.g.*, *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.") (cleaned up).

Second, Mr. Haft's attempt to revive his New York GBL claim fails on the merits. This Court previously dismissed this claim because Mr. Haft "fail[ed] to identify a sufficient connection between the alleged deceptive acts and New York." ECF No. 61 at 23. The Court explained, "to qualify as a prohibited act under the statute, the deception of a consumer must occur *in New York*." *Id.* at 24. The Court set forth the two tests New York courts apply to assess this requirement. *Id.* The "transaction test" asks whether the plaintiff "complete[d] the relevant transaction in New York," while the "substantial connection" test asks whether the plaintiff alleged "a sufficiently strong connection between the deceptive conduct and New York state." *Id.* at 24–25.

"Under either test," however, Mr. Haft once again "fail[s] to allege a sufficient connection between the transaction and New York." *Id.* at 24. He again concedes that, "though [he] resides in New York, he purchased the oven from an appliance store in New Jersey." *Id.*; *see also* CAC ¶ 50. As such, under New York's "transaction test, the relevant location here would be New Jersey." ECF No. 61 at 24. "Under the alternative test," meanwhile, Mr. Haft again does not allege that "he, in fact, viewed [GEA's allegedly deceptive] statements in New York, or that other aspects of the transactions had a connection to New York." *Id.* at 25. Thus, as before, he "fails to allege a sufficiently strong connection between the deceptive conduct and New York state." *Id.*

Plaintiff's sudden, convenient revelation that he ordered the oven over the phone from his home in New York—the only relevant revision between the FAC and the CAC—does not change this. As this Court explained, "the General Business Law analysis does not turn on the residency of the parties," and if a plaintiff's purchase of a product for mere "use in his home in [New York]" could trigger the statute, "it could pave the way for claims to proceed any time a plaintiff alleges, for instance, that they ordered a product online and directed the vendor to ship the product to a New York address." *Id.* at 25–26. The same problem would arise if a plaintiff could invoke the

GBL simply by calling an out-of-state seller from his home in New York, which is materially no different from ordering it online. Allowing a GBL claim in both these situations would sanction "an unwarranted expansive reading of the statute," run "contrary to the legislative intent," and "potentially lead[] to the nationwide, if not global application of General Business Law § 349." *Id.* at 25. "*Goshen* expressly cautions against" this result. *Id.* (citing *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 325 (2002)); *cf. K.C.P.L., Inc. v. Nash*, No. 98 CIV. 3773 (LMM), 1998 WL 823657, at *4 (S.D.N.Y. Nov. 24, 1998) ("New York law is clear that [phone] calls alone cannot provide a basis for the exercise of personal jurisdiction.").

Third, even if a single phone call from New York could subject a transaction with an out-of-state seller to the GBL (it cannot), Mr. Haft has not plausibly alleged he made such a call. *See Twombly*, 550 U.S. at 570 (allegations in a complaint must be plausible). He never raised this allegation before—not even after this Court dismissed the GBL claim in the FAC for lack of a sufficient connection to New York—and only raises it now, *after* GEA highlighted serious problems with his NJCFA claim. This is highly suspicious timing, especially for a fact that, if true, would have been disclosed early in the representation. If Mr. Haft truly had purchased the oven "over the phone while at his home in Brooklyn," CAC ¶ 50, he surely would have told his attorneys as much at the outset of this litigation or, at the latest, six months ago when the Court said he needed to "allege a stronger connection to the state of New York than the location of a product's delivery." ECF No. 61 at 26. The omission of this allegation, particularly in the face of this guidance, and its sudden appearance in the CAC following GEA's challenge to the NJCFA claim, is highly suspicious.

The only alternative explanation does not cross "the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. If Mr. Haft *did* purchase his oven over the phone from New York, the

only way to explain the exclusion of this fact from his first three pleadings is that his attorneys either never questioned him about basic case information or deemed it irrelevant. Although a phone call from New York does not cure the flaw in Mr. Haft's GBL claim, counsel obviously believes it does. So if Mr. Haft truly made such a call, counsel would have pleaded it in the SAC at the latest. Their failure to do undermines the credibility of the allegation to the point of implausibility.

### B. Plaintiff Haft Lacks Standing under the New Jersey Consumer Fraud Act.

In the alternative, Plaintiff Haft sues under the NJCFA. CAC ¶¶ 176–97. To bring a claim under this statute, however, Mr. Haft "must meet the requirement of 'statutory standing,' which is simply a question of whether the particular plaintiff has a cause of action under the statute." *Aiello v. Brown*, No. 21-0987-CV, 2021 WL 5505107, at *1 (2d Cir. Nov. 24, 2021).[10] Mr. Haft does not.

Specifically, Mr. Haft lacks statutory standing because "[a] plaintiff may bring state law consumer protection claims only under the law of the state where she lived and the alleged injury occurred." *Piller v. JPMorgan Chase Bank*, No. CV 20-2248, 2020 WL 8186165, at *2 (D.N.J. Oct. 23, 2020). Mr. Haft satisfies neither requirement. He lives in New York, and his alleged injuries—his broken oven and the out-of-pocket costs he incurred to repair it—arose outside New Jersey. *See* CAC ¶¶ 13, 50–54. Therefore, he lacks statutory standing, and his NJCFA claim should be dismissed. *See Piller*, 2020 WL 8186165, at *2–3 (dismissing NJCFA claim where "each of the challenged actions were effectuated through letters sent from Chase's offices in Delaware to Plaintiff's residence in New York"); *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255

---

[10] For this reason, statutory standing does not implicate a court's subject matter jurisdiction, and statutory standing arguments are properly raised under Rule 12(b)(6). *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, No. 14-CV-712 (SHS), 2020 WL 4349840, at *2 (S.D.N.Y. July 29, 2020).

(3d Cir. 2010) (plaintiff who purchased television in Arizona "is not entitled to sue under the New Jersey consumer fraud statute.").

Mr. Haft will likely argue that he has statutory standing because he bought the oven from a New Jersey seller. *See* CAC ¶ 50. That allegation does not establish that "the alleged injury occurred" there, however. In fact, although this Court indicated that "the relevant location here would be New Jersey" under *New York's* "relevant transaction" test, it also held that the NJCFA injuries Plaintiff pleaded consisted of his "out-of-pocket [costs] to repair the oven[]" and the loss of "the benefit of the bargain," both of which occurred outside New Jersey. ECF No. 61 at 24, 31.

Further, even if Mr. Haft bought his oven in New Jersey, that purchase does not "connect [*GEA's*] alleged conduct to New Jersey." *Piller*, 2020 WL 8186165, at *3. Mr. Haft does not allege, for instance, that GEA made misrepresentations or concealed material facts in New Jersey. Instead, he alleges that GEA refused to pay for his oven's repairs in New York and generally failed to disclose the alleged defect to consumers at large. *See* CAC ¶¶ 55–60, 91, 119, 181–82. "None of [this] allegedly wrongful conduct, however, bears any relationship to New Jersey" specifically. *Piller*, 2020 WL 8186165, at *2. Accordingly, "Plaintiff Haft fails to allege a sufficiently strong connection between the deceptive conduct and New [Jersey]." ECF No. 61 at 25. He therefore lacks statutory standing under the NJCFA, and his statutory claim should be dismissed. *See Cooper*, 374 F. App'x at 255; *Piller*, 2020 WL 8186165, at *2–3.

In light of the parallel failure of Mr. Haft's New York statutory claim, *see supra* § III.A, Mr. Haft might argue that dismissing his NJCFA claim will leave him without a remedy. This outcome, however, results not from a loophole in the law but from Mr. Haft's failure to adequately plead his claims. If Mr. Haft *had* alleged facts adequately asserting statutory standing under the New Jersey statute, for example, then he would still have a remedy. The problem here is not that

the law provides no remedy for people in Mr. Haft's position; it is that Mr. Haft has failed to adequately plead the proper legal theories. Dismissal of Mr. Haft's NJCFA claim thus will not deprive other plaintiffs of a remedy so long as they properly plead the underlying legal theory.

### C. Plaintiff Jones's Statutory Claim Fails.

Ms. Jones's claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") also fails, for two independent reasons.

#### 1. Ms. Jones fails to plead her FDUTPA claim with specificity.

Ms. Jones's FDUTPA claim first fails because she did not plead it with the requisite Rule 9(b) specificity. Rule 9(b) requires a party "alleging fraud" to "state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b). Therefore, where a claim "sound[s] in fraud," "Rule 9(b)'s heightened pleading standard applies." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019). This rule applies to FDUTPA claims. *See DJ Lincoln Enters., Inc. v. Google LLC*, No. 21-12894, 2022 WL 203365, at *3 (11th Cir. Jan. 24, 2022) (affirming dismissal of FDUTPA claim for failure to comply with Rule 9(b)); *Hummel v. Tamko Bldg. Prods., Inc.*, No. 6:15-CV-910-ORL-40GJK, 2015 WL 12843907, at *2 (M.D. Fla. Nov. 6, 2015) (dismissing on same basis).

Here, "the gravamen of [Ms. Jones's FDUTPA] claim sounds in fraud." *Hummel*, 2015 WL 12843907, at *2. Ms. Jones alleges that GEA "intentionally concealed the defective nature of the [Ovens] from her and the general public while continuing to market them as a durable, sustainable product." *Id.* at *3. She "also alleges that [GEA] actively concealed the defective nature of the [Ovens] to Class members." *Id.*; *see also* CAC ¶¶ 88–89, 104, 145. Finally, Ms. Jones cites "a series of alleged misrepresentations" to support her FDUTPA claim. *D.H.G. Props., LLC v. Ginn Cos., LLC*, No. 3:09-CV-735-J-34JRK, 2010 WL 5584464, at *5 n.9 (M.D. Fla. Sept. 28,

22

2010). Such claims allege "fraud" for Rule 9(b) purposes and trigger its heightened pleading requirement. *Id.*; *Hummel*, 2015 WL 12843907, at *2.

To satisfy this requirement, Ms. Jones "had to plead: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled [Ms. Jones]; and (4) what [GEA] gained by the alleged fraud." *DJ Lincoln*, 2022 WL 203365, at *3. The CAC lacks this specificity. First, Ms. Jones "wholly fails to identify the *precise* statements made by [GEA] or its associates" that constitute fraud. *Id.* (emphasis added). Instead, she broadly alleges that GEA:

> made material misrepresentations and/or omissions of fact . . . that the Ovens were not defective, were of high quality, were suitable for their purpose of cooking and heating food, and would last as long, if not longer, than the average service life of any comparable oven.

CAC ¶ 115; *see also id.* ¶ 145 (similar allegations). Likewise, "as to the time, place, and person responsible for the alleged statements, [Ms. Jones] offers nothing more than vague references," *DJ Lincoln*, 2022 WL 203365, at *3, alleging only that GEA made them on its website, in marketing materials, on product labels, and through employee statements "prior to . . . the time Plaintiffs and Class Members performed research on the Ovens," "purchased the Ovens," or "the glass broke." CAC ¶¶ 117–119. These "generalized allegations" do not satisfy Rule 9(b)'s requirements, mandating dismissal of Ms. Jones's FDUTPA claim. *D.H.G. Props.*, 2010 WL 5584464, at *6; *see also DJ Lincoln*, 2022 WL 203365, at *3; *Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*, 341 F. App'x 487, 494 (11th Cir. 2009) (affirming dismissal because "allegations [were] too vague and general to meet the requirements of Rule 9(b)").

### 2.    Ms. Jones alleges no misconduct in Florida.

Ms. Jones's FDUTPA claim also fails for the independent reason that she alleges no Florida misconduct. The FDUTPA "applies only to actions that occurred within the state of Florida." *Five*

*for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330 (S.D. Fla. 2012). Thus, when a complaint

"is void of any allegation that the *unfair practice complained of* . . . occurred in Florida," the

plaintiff "fails to state a cause of action under FDUTPA." *Signeo Int'l Ltd. v. Wade*, No. 6:12-CV-

1884-ORL-DAB, 2013 WL 12153590, at *5 (M.D. Fla. Apr. 1, 2013) (footnote omitted) (emphasis

added). Importantly, this means the "offending conduct" must have "occurred in Florida" for a

plaintiff to state a FDUTPA claim. *W.W. Sports Importadora Exportadora e Comercial Ltda v.*

*BPI Sports, LLC*, No. 0:16-CV-60147-WPD, 2016 WL 9375202, at *5 (S.D. Fla. Aug. 11, 2016)

(dismissing complaint that failed to meet this requirement).

       Ms. Jones makes no allegation to this effect. She alleges GEA violated the FDUTPA based

on allegedly false misrepresentations and material omissions concerning the alleged defect. *See*

CAC ¶ 145. But Ms. Jones does not allege that this "offending conduct" occurred in Florida. *W.W.*

*Sports*, 2016 WL 9375202, at *5; *see also* CAC ¶¶ 138–58. On the contrary, she alleges that GEA

"is a Delaware corporation with its principal place of business . . . [in] Louisville, Kentucky."

CAC ¶ 16. Thus, despite her allegation that it generally "sells its Ovens to consumers throughout

the United States, including in the State[] of Florida," *id.* ¶¶ 4, the most plausible reading of the

complaint is that GEA's alleged *misconduct*—the alleged misrepresentations and omissions—

occurred in Kentucky. *See Iqbal*, 556 U.S. at 681 (allegations implausible if "more likely

explanations" exist); *Beaver v. Inkmart, LLC*, No. 12-60028, 2012 WL 4005970, at *3 (S.D. Fla.

Sept. 12, 2012) (dismissing FDUTPA claim where "the allegedly deceptive conduct occurred

telephonically or via e-mail" from out-of-state defendants). Such extra-territorial conduct cannot

support a claim under the FDUTPA, and the Court should dismiss Ms. Jones's FDUTPA claim.

**IV.    THE COURT SHOULD DENY LEAVE TO AMEND.**

Plaintiffs may request leave to amend their complaint under Rule 15. *See* Fed. R. Civ. P. 15. Leave to amend should "generally be denied in instances of futility . . . [or] repeated failure to cure deficiencies by amendments previously allowed." *Banco Safra S.A.-Cayman Islands Branch v. Samarco Mineracao S.A.*, 849 F. App'x 289, 295 (2d Cir. 2021). Here, the Court has given Plaintiffs numerous chances to correct the shortcomings in their prior pleadings and provided specific guidance on how they could do that. *See* ECF No. 61 at 16–22, 35–36. They have also had a full round of additional briefing on another motion to dismiss—which this Court dismissed as moot following consolidation—that further highlighted deficiencies in their pleadings. But despite all this notice of the problems with their claims, Plaintiffs repeat the same mistakes they made in the FAC. Thus, whether due to the "futility" of amendment or Plaintiffs' "failure to cure deficiencies by amendments previously allowed," Plaintiffs should not receive a fifth bite at the apple. Their claims for breach of express warranty, injunctive relief, and violations of the New York, New Jersey, and Florida statutes should be dismissed with prejudice.

## V.     THE COURT SHOULD STRIKE ALL BUT THE PENNSYLVANIA CLASS.

Plaintiffs purport to bring this lawsuit on behalf of five putative classes, one each for residents of the United States, New York, Pennsylvania, New Jersey, and Florida "who own or owned a GE oven featuring a glass-front door made with soda lime glass." CAC ¶ 122. In light of the deficiencies outlined above, however, only Mr. Fisher's statutory claim on behalf of himself and the Pennsylvania class survives. *See id.* ¶¶ 198–225. Accordingly, the Nationwide, New York, New Jersey, and Florida Classes should be stricken. *See, e.g.*, *Tyman v. Pfizer, Inc.*, No. 16-CV-6941-LTS-BCM, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018) (striking class allegations as moot following dismissal of underlying claims).

## **CONCLUSION**

For these reasons, GEA respectfully requests that this Court dismiss Plaintiffs' claims for breach of express warranty, injunctive relief, and violations of the New York GBL, NJCFA, and FDUTPA with prejudice, strike the Nationwide, New York, New Jersey, and Florida sub-classes, and grant such other relief as the Court deems just and proper.

Dated:    July 6, 2022

Respectfully submitted,

*s/ Marissa S. Ronk*

Marissa S. Ronk (admitted *pro hac vice*)
Juan S. Ramirez (admitted *pro hac vice*)
Hays C. Doan (admitted *pro hac vice*)
Teresa G. Akkara (admitted *pro hac vice*)
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street Suite 4500
Denver, Colorado 80202-5647
Telephone:    303.244.1800
Facsimile:    303.244.1879
Email: ronk@wtotrial.com
          ramirez@wtotrial.com
          doan@wtotrial.com
          akkara@wtotrial.com

Mona Simonian
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036-6569
Telephone: 212.326.0413
Facsimile: 212.326.0806
Email: msimonian@pryorcashman.com

*Attorneys for Defendant Haier US Appliance Solutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 6, 2022, I electronically filed the foregoing **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND MOTION TO STRIKE CLASS ALLEGATIONS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Jonathan Betten Cohen**
  jcohen@milberg.com

- **Maryaneh Mona Simonian**
  msimonian@pryorcashman.com, docketing@pryorcashman.com

- **Rachel L. Soffin**
  rsoffin@milberg.com

- **Alex Rafael Straus**
  astraus@milberg.com

- **Harper T. Segui**
  hsegui@milberg.com

*s/ Kristyne Mellett*
Kristyne Mellett