**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
HAFT ET AL,

                                Plaintiffs,

                -against-

HAIER US APPLIANCE SOLUTIONS, INC.,

                                Defendant.
------------------------------------------------------------------X

**ORDER**

**21-CV-0506 (GHW) (JW)**

**JENNIFER E. WILLIS, United States Magistrate Judge:**

Plaintiffs Asher Haft, Robert Fisher, and Cheryl Jones bring this putative class action individually and on behalf of consumers who purchased ranges and wall ovens with soda lime glass front doors (collectively, the "Ovens") manufactured by Defendant. Following the parties, July 14, 2022 conference, the Court ordered Plaintiffs to file "arguments with supporting caselaw to strike Defendant's objections to Plaintiffs' discovery requests regarding bifurcation and sales data." Dkt. No. 106. Plaintiffs thereafter filed their motion to compel sales data from Defendant (the "Motion"). Dkt. No. 123. Defendant opposed (Dkt. No. 128), and Plaintiff filed a reply. Dkt. No. 129. For the reasons set forth below, Plaintiff's Motion is granted in part and denied in part.

## PLAINTIFFS' MOTION

Plaintiffs seek two types of data, which they claim are relevant for their experts "to develop and implement a damages model for purposes of class certification" – sell-in data and sell-through data. Dkt. No. 123 at 5. Sell-in data consists of "(a) the number of Oven units sold to specific retailers, as well as (b) the price at which the

units sold to retailers." Id. Sell-through data consists of "(a) the number (or assumed number) of Ovens sold, and (b) the average retail price at which the Ovens were sold." Id. Plaintiffs' experts will "conduct a conjoint analysis to determine the reduction in value of the Ovens due solely" to the alleged defect in the Ovens. Id. at 3.

Then, "[u]sing the results of the conjoint survey, Plaintiffs' damages expert will account for the supply side of the damages analysis by 'ensuring (1) the price range used in the survey reflects the actual market prices that prevailed during the class period; and (2) the quantity of Class Ovens used (or assumed) in the damages calculations reflects the actual quantity of such ovens sold during the class period' . . . ." Id. at 4. Plaintiffs argue that Defendant's failure to disclose sales data will prejudice Plaintiffs because it "will unjustly enable Defendant to argue that Plaintiffs do not have (or cannot obtain) the necessary data to field the [conjoint] survey following class certification." Id. at 8. Accordingly, "[i]f Plaintiffs are not permitted discovery on Defendant's sales data prior to class certification then, at a minimum, Defendant should not be allowed to challenge Plaintiff's inability to ascertain this information." Id. Lastly, Plaintiffs contend that fact discovery should be extended so that Plaintiffs have sufficient time to obtain the requested data from Defendant's retailers and distributors. Id. at 9.

## DEFENDANT'S OPPOSITION

Defendant argues that Plaintiffs' Motion should be denied because "Plaintiffs have not identified the [Requests for Production] under which they seek to compel information." Dkt. No. 128 at 4. As to the substance of Plaintiffs' Motion, Defendant

asserts that it does not have sell-through data and sell-in data is irrelevant for two reasons.  First, Plaintiffs' expert Colin B. Weir intends to use retail sales data – the number of units retailers sold to end users rather than the number of units Defendant sold to retailers.  Id. at 6.  Second, "each Plaintiff's alleged damages arose '*at the point-of-sale* stemming from *their overpayment* for the defective Oven."  Id. at 7 (emphasis in original).  "Likewise, Mr. Weir says he will 'use pricing from *retail* sales data' to calculate 'the difference in market value of Class Ovens with the Defect compared to the market value of Class Ovens without the Defect *at the time of purchase*.'"  Id.  Defendant thus asserts that "[t]he prices at which [Defendant] sold ovens to retailers has no bearing on this calculation."  Id.  Such a position, Defendant states, is consistent with Plaintiffs' breach of warranty and statutory claims, which all focus on the price paid by the consumer.  Id. at 7-8.

In addition, Defendant contends that the information Plaintiffs seek is "highly sensitive and confidential" and Defendant "risks serious harm if the information was disclosed to its competitors or its retailers."  Id. at 9.  Despite its arguments as to relevance and confidentiality; however, Defendant is willing "to produce lists showing the total unit volume (for the parties' agreed-upon model scope) it shipped to the four states in the relevant time period, supplemental national sales data that includes the additional models the parties agreed to add to the model scope, and certain retailer-specific quantities."  Id. at 6.  If the Court compels any volume or pricing information, Defendant asserts that the Court should do so only if a class is certified.  Id. at 9.  Lastly, Defendant states that the Court should not preclude Defendant from

challenging Plaintiffs' still undisclosed expert discovery and should deny Plaintiffs' discovery extension request because Plaintiffs have failed to explain why good cause exists and have not requested a specific time for extension. <u>Id</u> at 9-10.

## PLAINTIFFS' REPLY

Plaintiff states Defendant has only provided the names of its retailers and distributors despite having "ready access" to sales data regarding the number of Ovens sold or the dollar amount that it sold the Ovens to its retailers. Dkt. No. 129 at 2. The fact that Defendant "does not track where the Ovens are sold . . . is not a valid reason to withhold data that would allow Plaintiffs to obtain this information through third-party discovery." <u>Id</u>. Plaintiffs dispute Defendant's argument regarding the sensitivity of the requested data given the parties' confidentiality order. <u>Id</u>. at 2-3. Plaintiffs also rebuke Defendant's argument that they did not identify the specific Requests for Production ("RFPs") at issue. "[A]ll of this information was incorporated within the Motion through Plaintiffs' pre-motion letter . . . which was argued at the [parties'] one-and-a-half hour hearing, after which this Honorable Court ordered further briefing." <u>Id</u>. at 3.

Plaintiffs request the following nationwide Oven unit sales data so that Plaintiffs and their experts can pursue third-party discovery: "(a) the date of sale, (b) the purchasing entity, (c) the state where the purchasing entity is located, (d) the state where the order was shipped, (e) the SKU and quantity of Oven range(s) purchased by each purchasing entity, and (f) the price the purchasing entity paid for

each Oven." Id. at 5 (internal citations omitted).  Alternatively, Defendant "should produce the sales data for the relevant states to which it has shipped the Ovens." Id.

## DISCUSSION

To begin, the Court notes that it is unpersuaded by Defendant's argument that Plaintiff's Motion should be denied outright for failing to state the specific RFPs at issue.  The parties were aware both before, during, and after the parties' July 14, 2022 conference of the RFPs at issue considering the parties' pre-motion letters and discussion during the conference.

As to the substance of Plaintiffs' Motion, Plaintiffs' data requests take different forms in their Motion and reply in support of their Motion.  At the core of Plaintiffs' Motion, however, the Court understands that Plaintiffs request sell-through data of the Ovens so that expert Weir can conduct a damages analysis.  While Plaintiffs and expert Weir also state that they require sell-in data, neither has explained how that data is relevant to Plaintiffs' claims, the conjoint survey or a damages analysis.  As Plaintiffs' expert Weir notes, he will use "a conjoint survey to measure the overpayment for the Class Ovens *at the time and point of sale* as a result of the alleged Defect."  Dkt. No. 123-1 at 2 (emphasis added).  Plaintiffs' claims focus on overpayment of the Ovens by consumers, not retailers.  Dkt. No. 94 ¶¶ 156, 170, 191, 224, 260, 295, 330, 365.  Therefore, only sell-through, not sell-in, data is relevant, and the Court denies Plaintiffs' Motion to the extent it seeks to compel Defendant to produce sell-in price data.

Defendant's lack of sell-through data (Dkt. No. 128 at 5) does not relieve it of production of sales data altogether, however.  The Court appreciates that Plaintiffs will likely have to undergo significant third-party discovery to obtain sell-through data from Defendant's distributors and retailers.  For such third-party discovery to be productive, Plaintiffs require certain data regarding these distributors and retailers.  Defendant admits that its financial analytics software, Tableau, stores the "date of sale, Purchasing Entity, state where the Purchasing Entity is located, state where the order was shipped, SKU and quantity of oven range(s) purchased, and the price the Purchasing Entity paid [Defendant]."  Dkt. No. 128-2 ¶ 4.  Plaintiffs request the same information nationwide in their reply.  Plaintiffs' request for price data, however, differs in that it asks for "the price the purchasing entity paid for *each* Oven."  Dkt. No. 129 at 5 (emphasis added).

The Court finds that Defendant must produce the following data from Tableau – date of sale, purchasing entity, state where the purchasing entity is located, state where the order was shipped, and SKU and quantity of Ovens purchased.  This data will enable Plaintiffs to direct appropriate third-party discovery to retailers and distributors to obtain sell-through data for their conjoint survey and damages analysis.  The data does not implicate Defendant's confidentiality and sensitivity concerns given the parties' Stipulated Confidentiality Agreement and Protective Order.  Dkt. No. 43.  Defendant must produce such information for independent retailers located in the following states – New York, New Jersey, Florida, and Pennsylvania (the "States").  For national and online retailers, Defendant must

produce such information only for orders shipped to any one of the States.  Defendant need not produce such information for buying groups because Defendant states it "does not have data on where the oven ranges associated with those sales were ultimately sold" and thus Defendant cannot determine if the sales relate to Ovens sold to consumers in the States.  See Dkt. No. 128-2 ¶ 9.

Defendant need not produce the price the purchasing entity paid Defendant as Plaintiffs have failed to articulate the relevance of such data to their complaint, conjoint survey or damages analysis, which are based on the price consumers, not retailers, paid for the Ovens.  The Court rejects Plaintiffs' request for the relevant data on a nationwide basis because Plaintiff only brings this suit on behalf of consumers in New York, New Jersey, Florida, and Pennsylvania.  Moreover, the Court rejects Plaintiffs' argument regarding Defendant's potential challenge to Plaintiffs' inability to ascertain sales data as premature.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' Motion.  If Plaintiffs require additional time for fact discovery, Plaintiffs may file a letter in accordance with the Court's Individual Practices specifying the time needed.

SO ORDERED.

DATED:      New York, New York
            September 20, 2022

_Jennifer E. Willis_
JENNIFER E. WILLIS
United States Magistrate Judge

7